David Lawrence SWAAB, Appellant,

v.

Janie Guerra SWAAB, Appellee.

No. 14–06–00593–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

April 24, 2008.

Rehearing Overruled Nov. 20, 2008.

---

1. 811 S.W.2d at 943.

**522**

David Guerra Swaab, Houston, pro se.

Ronnie G. Harrison, Houston, for appellant.

Hugh J. Plummer, Michael D. Farmer, Houston, for appellee.

Panel consists of Justices YATES, FOWLER, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

Appellant David Lawrence Swaab challenges the trial court's final judgment in his suit for divorce. In twelve issues, he contends the trial court abused its discretion with regard to: (1) its award of child support, (2) its division of the marital estate, (3) conservatorship issues, (4) the amount of time it allotted for his review of the proposed final divorce decree, and (5) its imposition of a requirement that the parties mediate prior to filing a suit for modification. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

David Lawrence Swaab and Janie Guerra Swaab were married in March 1994. They have one child, A.S, who was born on July 14, 1996.[1] On September 24, 2003, Janie filed a petition for divorce; David filed an answer and later filed a counter-petition.

The trial court conducted a four-day bench trial in May 2006, with the parties presenting evidence on property, child support, and conservatorship issues. But prior to the conclusion of trial, the parties announced they had entered into a Rule 11 property settlement agreement ("Settlement Agreement"),[2] in which they agreed:

---

1. To protect the privacy of the child, we identify her by her initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (Vernon 2002).

2. *See* TEX. R. CIV. P. 11.

- David would pay $125,657 to Janie secured by a lien on their residence (the "Fairhope Property");[3]
- each party would assume and be responsible for debts in that party's' name, except that David would be responsible for the mortgage payments on the Fairhope Property;
- each party would be awarded the vehicle in his or her possession and assume its outstanding debt; and
- each party would be awarded the personal property in his or her possession, and within 10 days of signing the agreement, Janie would be allowed to remove items of personal property from the Fairhope Property.

Because the trial court approved the Settlement Agreement, the only remaining contested issues concerned child support and conservatorship. The evidence relevant to these issues is summarized below.

David and Janie lived together for ten years before they married in 1994. At the time of the trial, David had been self-employed as a business and investment counselor working out of his home for about thirty years. Although he did not hold a degree, David testified that he had attended numerous colleges, including Harvard University, the University of California at Los Angeles, the University of Texas at Austin, Southwest University, Mississippi College, Millsaps College, and Tarrant County Junior College. Janie obtained an associate's degree during the marriage and began working as an MRI technician at some point before the hearing. David's mother, Ruth Swaab, testified regarding various amounts of money she had provided during the course of her son's marriage. In addition, numerous ex-

hibits, including the parties' individual inventory and appraisements, proposed property divisions, and various income tax forms from prior tax years were admitted into evidence.

The court-appointed psychologist, Dr. Karen Gollaher, submitted a report to the trial court with her recommendations regarding custody of A.S. Her evaluation was based on multiple interviews with David and Janie, observation of their behavior with A.S., review of questionnaires completed by them, review of various documents provided by both parties, and individual interviews with A.S. In her report, Dr. Gollaher recommended that David and Janie be appointed joint managing conservators of A.S., and that Janie be granted the exclusive right to make psychological and educational choices for A.S., as well as to establish her primary residence. Dr. Gollaher also recommended that Janie take A.S. to Texas Children's Hospital and formulate a plan to address her weight.[4]

By letter dated May 15, 2006, the court informed the parties' counsel that it had approved and granted the parties' proposed property division as set forth in the Settlement Agreement. The letter ruling further stated that (1) Janie and David would be appointed joint managing conservators of A.S. with Janie as the primary conservator subject to certain geographical restrictions, (2) David would pay child support of $1,200 per month, (3) Janie would provide A.S.'s medical insurance, and (4) Janie would have the exclusive right to make educational and medical decisions regarding A.S.

On June 2, 2006, the trial court held a hearing for entry of the divorce decree and subsequently signed a final decree of di-

---

3. Of this amount, $100,000 represented the property awarded to Janie and the remaining $25,657 represented Janie's attorneys' fees.

4. At the time of trial, A.S. was nine years old and weighed approximately 160 pounds.

vorce. In the divorce decree, the court appointed David and Janie joint managing conservators of A.S., and awarded Janie the exclusive right to make medical, psychological, and educational decisions for A.S. and to establish A.S.'s primary residence. In addition, the trial court ordered David to pay (a) $1,200 in monthly child support; (b) $125,657.00 to Janie, with the debt secured by a lien on the Fairhope Property; (c) all loans owed to Ruth; and (d) all federal income tax liabilities of the parties from the date of marriage through the date of divorce,[5] including any deficiencies, assessments, penalties, or interest, except that each party would be responsible for any tax liability resulting from omission of his or her own taxable income or his or her own erroneous deductions. Finally, the trial court ordered that, except in the case of an emergency, the parties must attempt to mediate any dispute prior to filing suit for modification of the divorce decree. David timely filed his notice of appeal.

## II. Issues Presented

In twelve issues, David asserts that the trial court abused its discretion by:

- setting child support at $1,200 per month in contravention of Texas Family Code child support guidelines;
- entering a divorce decree ordering that David assume federal income tax liability contrary to the parties' Settlement Agreement;
- entering a divorce decree ordering David to pay all loans due to Ruth contrary to the parties' Settlement Agreement;
- failing to provide a "just and right" division of the marital estate;

- signing the divorce decree without providing David reasonable time to review and lodge any objections;
- applying a lien to the entirety of the Fairhope Property;
- requiring mediation prior to modification of the divorce decree;
- awarding Janie the exclusive right to make all medical and educational decisions regarding A.S.;
- awarding Janie the exclusive right to consent to all psychiatric and psychological treatment for A.S.;
- appointing Janie the joint managing conservator with the exclusive right to establish A.S.'s primary residence; and
- failing to appoint David as A.S.'s sole managing conservator.

## III. Analysis

### A. Standard of Review

We review a trial court's decisions concerning conservatorship, support, and property division under an abuse of discretion standard. *See Grayson v. Grayson,* 103 S.W.3d 559, 561 (Tex.App.-San Antonio 2003, no pet.); *see also Schlueter v. Schlueter,* 975 S.W.2d 584, 589 (Tex. 1998) (recognizing trial court is afforded wide discretion in dividing marital estate); *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990) (noting order regarding child support will not be disturbed on appeal absent clear abuse of discretion). Generally, the test for an abuse of discretion is whether the trial court acted arbitrarily or unreasonably, or whether it acted without reference to any guiding rules or principles. *See Worford,* 801 S.W.2d at 109; *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985); *Baltzer v.*

---

**5.** In his amended inventory and appraisements, David reports a community liability of

$9,000 from the previous tax year.

*Medina,* 240 S.W.3d 469, 475 (Tex.App.-Houston [14th Dist.] 2007, no pet.). When a party asserts that the trial court abused its discretion due to a lack of evidence, however, we engage in a two-pronged inquiry to determine whether the trial court (1) had sufficient information on which to exercise its discretion, and (2) erred in its application of discretion. *See Zeifman v. Michels,* 212 S.W.3d 582, 588 (Tex.App.-Austin 2006, pet. denied). Thus, there is ordinarily no abuse of discretion where some evidence of a substantive and probative character exists to support the trial court's decision. *Baltzer,* 240 S.W.3d at 475.

**B. Child Support**

In his first issue, David contends that the trial court abused its discretion in ordering him to pay monthly child support of $1,200, in contravention of the guidelines set forth in the Texas Family Code. Specifically, David argues that (a) the court failed to make findings despite his request that it do so; (b) even without a request, the trial court was required to make findings because the amount of child support ordered varied from the Texas Family Code guidelines; and (c) assuming the court followed the child support guidelines, it overestimated David's earnings potential.

*1. Findings*

 As is relevant here, a trial court must make certain specific findings regarding the computation of child support when (a) a party makes an oral request in open court for findings during the hearing, or (b) the amount ordered varies from the amount computed by applying the percentage guidelines. *See* TEX. FAM. CODE ANN. § 154.130(a)(2), (3) (Vernon 2002).

David first argues that his attorney "made an oral request, albeit inartfully articulated, in open court for a finding by the court of the formula used to determine child support." We disagree that David's attorney requested findings. The exchange at the hearing for entry of judgment during which David contends his attorney made such an oral request occurred as follows:

—real quick. Your Honor, we had settled the—all the financial issues that was [sic] involved in the—this property settlement by agreement in the middle of the trial, as the Court may recall. We surprised the Court one morning and said we've reached an agreement on attorney's fees and property land division. But that was—what happened then is sort of like a football player that had both good legs. That stuff didn't even exist anymore. *So, there is no finding, Your Honor, that it was based on any type of formula that I think the statute requires if you're not going to follow the guidelines.* I realize this—

Rather than constituting a request for findings under subsection 154.130(a)(2), these statements instead indicate that David did not believe the trial court followed the child support guidelines in determining the amount of child support.[6] In fact, the trial court responded to these observations by stating that it had followed the guidelines, an issue we consider next.

*2. The Child Support Guidelines*

 According to the guidelines, if an obligor's monthly net resources are more than $6,000, the trial court must apply the percentage guidelines to the first $6,000 of

6. In other words, although it is clear that David notified the trial court of his belief that it had used the wrong formula in computing the child support award, he did not ask the trial court to, in the parlance of math teachers everywhere, "show its work."

the obligor's net resources, which results in a minimum child support award of $1,200 for one child. *Id.* §§ 154.125(b); 154.126(a). The trial court may, however, order additional amounts of child support "as appropriate, depending on the income of the parties and the proven needs of the child." *Id.* § 154.126(a). Where an obligor's income fluctuates significantly, a court may average such income for purposes of calculating child support obligations under the statutory guidelines. *See Norris v. Norris,* 56 S.W.3d 333, 341–42 (Tex.App.-El Paso 2001, no pet.) (determining that the trial court did not abuse its discretion by ordering support based upon average amount of monthly net resources for two-year period given fluctuation in obligor's income); *see also In re Sanders,* 159 S.W.3d 797, 801 (Tex.App.-Amarillo 2005, no pet.) (upholding trial court's averaging of obligor's income for ten-year period in determining retroactive monthly support).

In the divorce decree, the trial court ordered David to pay child support in the amount of $1,200 per month. It therefore appears that the trial court found the evidence sufficient to support a finding that David's monthly net resources equaled at least $6,000. *See* TEX. FAM. CODE ANN. § 154.126(a). Because David was self-employed, his gross monthly resources must have exceeded $8,854.81 to result in at least $6,000 in monthly net resources. *See id.* § 154.061(b) (Vernon Supp.2007).

The undisputed evidence of David's net resources included tax returns for the years 1996–2002 and 2004–2005.[7] David verified that the income indicated on these tax returns was his alone, despite the fact that most of these returns were filed jointly. According to these returns, David's income varied from a high of $541,900 in 1997 to a low of $10,360 in 2001. Given the undisputed fluctuation in David's income, the trial court could have justifiably averaged his income from these returns.[8] *See Norris,* 56 S.W.3d at 341–42; *see also In re Sanders,* 159 S.W.3d at 801. According to his tax returns, David's total gross income for this period was $1,109,386, or an average annual income of $123,265. This amount represents a gross monthly income of $10,272, which exceeds that necessary to net $6,000 per month under the self-employed persons tax chart. TEX. FAM.

---

7. The record does not contain a tax return for tax year 2003.

8. In his Post–Submission Brief, David cites *In re Marriage of Grossnickle* as support for his argument that the trial court was not entitled to consider evidence of his resources that dated back more than three years. 115 S.W.3d 238 (Tex.App.-Texarkana 2003, no pet.). In *Grossnickle,* a father and mother appealed the trial court's order modifying the award of child support. *Id.* at 242. In deciding whether to increase the original award, the trial court considered, among other things, the father's tax returns from 1998 to 2000 (the most recent available at the time of the hearing) to determine his net income. *Id.* at 247. In a footnote, the appeals court noted that it disregarded evidence of the father's income dating back to the divorce as "not relevant to this determination, which is neces-

sarily based on the assets at the present time rather than real or imagined assets that may have existed in 1996 or 1997, save only as it might relate to a loss or increase in value at the present time." *Id.* at 248 n. 6.

David's reliance on *Grossnickle* is misplaced. That case involved an appeal from a *modification* of child support, not from an original child support award, as in this case. Thus, the court compared the financial circumstances of the affected parties at the time the support order was entered with their circumstances at the time modification was sought. *Id.* at 245. And although the *Grossnickle* court determined that such evidence was "not relevant to *this* determination," it in no way suggested that consideration of tax returns dating back more than three years is generally inappropriate, especially in making an original support determination.

CODE ANN. § 154.061(b). Thus, we conclude the trial court did not abuse its discretion in applying the percentage guidelines to the first $6,000 of David's net resources, resulting in the $1,200 child support award. *Id.* §§ 154.125(b), 154.126(a). Because the trial court's child support order conforms to the guidelines, the trial court was not required to make findings. *Id.* § 154.130(a)(3).

In sum, given the dramatic fluctuation in David's self-employment income, the trial court had the discretion to average David's past income to determine his approximate net monthly resources.[9] Under these circumstances, we cannot say that the trial court abused its discretion in ordering $1,200 per month in child support. Accordingly, we overrule David's first issue.[10]

### C. Income Tax Liability

■ In his second issue, David contends the trial court abused its discretion by ordering him to assume federal income tax liability contrary to the parties' Rule 11 agreement. In the divorce decree, the trial court ordered that David "shall be one hundred (100%) responsible for all federal income tax liabilities of the parties from the date of marriage through the date of divorce, and shall timely pay one-hundred percent (100%) of any deficiencies, assessments, penalties, or interest due thereon...."[11]

As is relevant here, to preserve error for appeal, a party must bring his complaint to the trial court's attention by timely request, objection, or motion. *See* TEX. R. APP. P. 33.1(a); *In re Marriage of Lendman*, 170 S.W.3d 894, 898 (Tex.App.-Texarkana 2005, no pet.) (noting trial court has no opportunity to rule on issue or to correct ruling made in error where matter is not presented to court (citing *Lewis v. Tex. Employers Ins. Ass'n*, 151 Tex. 95, 246 S.W.2d 599, 600 (1952))). But our review of the record indicates David did not complain to the trial court about this provision in the divorce decree. In failing to do so, he has not preserved this issue for our review. We therefore overrule David's second issue.

### D. Repayment of Loans

■ In his third issue, David contends the trial court abused its discretion by ordering him to repay all of the loans owed to Ruth. He argues this order is contrary to the parties' Rule 11 Settlement Agreement. But the Rule 11 Agreement be-

---

9. Moreover, David testified that his income largely depends on the profitability of the portfolios he manages. According to David, he has recently begun managing the portfolio of a new client and has "done nicely" for this client, who has started sending him new business.

10. In a post-submission brief, David contends that the trial court was not authorized to order him to pay private school tuition for A.S. But other than a brief reference to this issue in the summary of argument section, David has not set forth any specific argument and analysis with supporting authorities and record citations related to this issue in his brief. *See Chapman v. Olbrich*, 217 S.W.3d 482, 501 (Tex.App.-Houston [14th Dist.] 2006, no pet.); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (holding that, although courts interpret briefing requirements reasonably and liberally, parties asserting error on appeal still must put forth some specific argument and analysis citing the record and authorities in support of the parties' argument). An issue raised for the first time in an appellate reply brief will not be considered on appeal. *See* TEX. R. APP. P. 38.3 ("The appellant may file a reply brief addressing any matter in the appellee's brief."); *Crowder v. Scheirman*, 186 S.W.3d 116, 121 (Tex.App.-Houston [1st Dist.] 2005, no pet.). Thus, David has waived this issue.

11. As noted above, David reported a $9,000 tax obligation as a community liability.

tween David and Janie makes no mention of any specific loans; in fact, the only reference to debts included in the agreement requires each party to "assume and be responsible for debts in the respective parties' names...." The trial court subsequently approved the Settlement Agreement and, as part of the division of the marital estate in the divorce decree, ordered that David pay "[a]ll loans payable to Ruth W. Swaab."

In support of his argument that the trial court abused its discretion in ordering that he assume sole responsibility for repayment of the loans owed to Ruth, David contends that Janie's proposed property division allocated the loan repayments equally between them. But a close examination of Janie's proposed property division does not support this assertion; only David's proposed property division reflects both the loans to Ruth and an equal allocation of payments for those loans. We find no evidence in the record to suggest that Janie ever agreed to assume repayment of one-half of any loans owed to Ruth.[12] Moreover, Ruth testified that if the loans were not repaid, the debt would be taken out of David's inheritance. Hence the trial court reasonably could have concluded that these loans, if any, were made solely to David.

Based on this evidence, we conclude the trial court did not abuse its discretion by ordering David to assume responsibility for repayment of any loans owed to Ruth. Accordingly, we overrule David's third issue.

## E. Division of Marital Property

■ In his fourth issue, David contends the trial court abused its discretion by failing to divide the marital estate in a "just and right" manner. Specifically, he argues the division is disproportionate because "Janie has received all of the assets of the marital estate and [he] has received nothing but liabilities and [ ] is incapable of bearing the burden placed upon him by the court."

To promote the amicable settlement of disputes in a suit for divorce, spouses may enter into a written agreement concerning the division of their property and liabilities. TEX. FAM. CODE ANN. § 7.006(a) (Vernon 2006). If the trial court finds that the terms of such an agreement are just and right, those terms are binding on the court. *Id.* § 7.006(b).

As noted above, David and Janie entered into a Rule 11 Settlement Agreement prior to entry of the divorce decree, which provided for the division of the marital estate. At trial, David's attorney informed the court that his client had initialed the Agreement and requested that the court approve and adopt it. The trial court approved the Settlement Agreement, and its terms were incorporated into the division of the marital estate in the divorce decree.

On appeal, David faces two problems. First, he has not explained how the property division included in the divorce decree differs from the Settlement Agreement he

**12.** In fact, Ruth testified that there were no written agreements regarding any "loans" made to David and Janie over the course of their marriage. Several of the checks she gave to David or paid to others on his behalf that were entered into evidence included a notation that they were "loans." But Ruth stated she considered this money loaned to David because she planned to offset his inheritance by this amount; she admitted that there were no official documents nor was there any time frame for repayment of any of these amounts. Finally, she testified that she could not say whether Janie knew about the money she had provided to David over the years, although she assumed David had made Janie aware of her support.

and Janie entered. Second, and more importantly, David has not directed us to any evidence that he repudiated, or otherwise objected to, the Settlement Agreement before rendition of the divorce. *See, e.g., Baylor Coll. of Med. v. Camberg*, 247 S.W.3d 342, 347 (Tex.App.-Houston [14th Dist.] 2008, no pet. h.) (noting that an appellant must establish the trial court was aware of withdrawal of consent to a settlement agreement to require a new trial); *see also* TEX. FAM. CODE ANN. § 7.006(a), (b) (providing that spouses in a suit for divorce may enter into a written agreement concerning the division of property and liabilities and that the trial court is bound by the terms of such an agreement when it finds it is "just and right"). Under these circumstances, we cannot say the trial court abused its discretion by entering judgment based on the parties' Settlement Agreement. *See First Heights Bank, FSB v. Marom*, 934 S.W.2d 843, 845 (Tex.App.-Houston [14th Dist.] 1996, no writ); *see also Zavala v. Zavala*, No. 14–06–00081–CV, 2007 WL 1558732, at *4 (Tex.App.-Houston [14th Dist.] May 31, 2007, no pet.) (mem.op.). We therefore overrule David's fourth issue.

**F. Reasonable Time for Review**

In his fifth issue, David contends the trial court abused its discretion by signing the divorce decree without providing him a reasonable amount of time to review and lodge objections to the divorce decree. He argues that because the divorce decree contained provisions not agreed to by the parties, the court's failure to do so constitutes harmful error.

In support of his argument, David directs us to Harris County Family Court Local Rule 3.8, which provides, in relevant part: "The party who is directed to prepare the judgment or order shall furnish all opposing parties with a copy of the proposed judgment or order at least five (5) days prior to entry date." [13] HARRIS COUNTY FAM. CT. LOC. R. 3.8. In this case, Janie's attorney prepared the proposed judgment. David claims that he and his attorney were not provided a complete copy of the proposed divorce decree until the hearing on the motion for entry the divorce decree, at which time the following exchange took place:

> Janie's Counsel: I request the Court to order Mr. Swaab to sign the forms necessary to accompany this Decree. He's refused to do so. They are prepared, and the information there is correct.
>
> David's Counsel: Well, I think he'll sign the vital statistics. We have to fill in some spots.
>
> You need to sign right here and right here.
>
> David: Some of these papers weren't even handed to my attorney until 9:00.
>
> The Court: I understand.
>
> David: So, it's hard for me to sign something that doesn't even—
>
> The Court: We understand.
>
> David:—my attorney. So, I did not refuse.

**13.** Janie argues that David has waived this issue on appeal because he did not object at the hearing that she failed to comply with the local rule. We disagree. The record reflects that David's attorney informed the court that his client did not want to approve the decree because he had not had a chance to study it, and that he wanted several more days to review it. We conclude that this request was sufficient to preserve David's complaint for appeal. *See* TEX. R. APP. P. 33.1 (to preserve complaint for appellate review, party must make timely request, objection, or motion stating grounds with sufficient specificity to make trial court aware of complaint).

The Court: I didn't think you did. And everything an attorney says to me representing a party, I will assume is on behalf of that party. And I'm usually correct.

But this discussion does not relate to when David and his attorney received a copy of the divorce decree; rather, it refers to when David and his attorney received various forms, e.g., deeds, etc., to be executed per the divorce decree.[14] David's attorney subsequently stated:

One other—so, that the Court will understand why he did not want me to approve signing the Final Decree is because he hasn't had a chance to study it. And we did make some changes at my request. A lot of them were done, and some of them were done this morning. We ordered an error that was inadvertent. And but [sic] Mr. Swaab has not had a chance to study it, and really wanted several more days to look at it. I've been over it several times. I've seen these all the time. He doesn't. And I can just look at a page almost and see if there's a word out of order.

These statements do not establish when David and his attorney actually received the proposed judgment from Janie's attorney. In particular, the statement by David's attorney that "a lot of [the changes to the proposed divorce decree] were done, and some of them were done this morning," implies that some changes were made before the morning of the hearing.

Finally, David does not direct us to any evidence, such as a facsimile copy of the proposed divorce decree or a return re-

ceipt, establishing the actual date his attorney received the proposed divorce decree. In the absence of such evidence, we cannot say that the trial court denied David a reasonable amount of time to review the proposed decree before it entered its order.[15] We therefore overrule issue five.

## G. Property Lien

In his sixth issue, David contends that the trial court abused its discretion in ordering a lien on the entirety of the Fairhope Property. Specifically, he argues that because Ruth has an ownership interest in the property, the trial court erred by ordering an encumbrance on the entire property.

Pursuant to the terms of the parties' Settlement Agreement, David agreed to pay Janie $125,657, secured by a lien on the Fairhope Property. At the hearing, Janie's counsel asked the trial court to order David to sign the deed with the owelty partition and real estate lien note to effectuate the parties' property Settlement Agreement. In response, David's attorney stated that he had a deed for Janie to sign as well. In the divorce decree, David was awarded the Fairhope Property as his sole and separate property. In accordance with the parties' Settlement Agreement, the trial court also ordered the imposition of an owelty partition against the property to secure the above-referenced payment to Janie.

David's counsel did not object to the imposition of the lien on the entire Fair-

---

14. According to Local Rule 3.8, "[a]ll forms required by governmental entities shall be submitted at the time the judgment or order is submitted." HARRIS COUNTY FAM. CT. LOC. R. 3.8.

15. Indeed, David's attorney articulated objections to some of the terms of the divorce

decree. For example, David's attorney stated that David was entitled to a standard extended possession order, which was not reflected in the proposed divorce decree. In response, the trial court changed the divorce decree to reflect the standard extended possession.

hope Property, or otherwise bring this complaint to the trial court's attention. Thus, he has not preserved this issue for appeal. *See* TEX. R. APP. P. 33.1. We overrule David's sixth issue.

## H. Mediation

■ In his seventh issue, David contends the trial court abused its discretion by requiring mediation prior to modification of the final divorce decree. "In rendering an order appointing joint managing conservators, the court shall ... if feasible, recommend that the parties use an alternative dispute resolution method before requesting enforcement or modification of the terms and conditions of the joint conservatorship through litigation, except in an emergency." TEX. FAM. CODE ANN. § 153.134(b)(5). David asserts that the trial court exceeded its authority, however, because rather than recommending alternative dispute resolution prior to seeking enforcement or modification, the divorce decree here mandates it.

The divorce decree provides, in pertinent part:

> The parties agree that preference shall be given to carrying out the Standard Possession Order, standard conservatorship provisions and coverage for child support and medical insurance contained in the Final Decree of Divorce. *If a dispute between the parties arises out of this Final Decree of Divorce, the parties agree that before setting any hearing or initiating any discovery in a suit for modification of the terms and conditions of conservatorship, possession, or support of the child, except in an emergency, the parties shall mediate the controversy in good faith.* This requirement does not apply to actions brought to enforce the Final Decree of Divorce or to enforce any subsequent modification of this decree. It is agreed

that the party wishing to modify the terms and conditions of conservatorship, possession, or support of the child shall give written notice to the other party of a desire to mediate the controversy. *If within ten days after receipt of the written notice, the parties cannot agree on a mediator or the other party does not agree to attend mediation or fails to attend a scheduled mediation of the controversy, the party desiring modification shall be released from the obligation to mediate and shall be free to file suit for modification.*

(emphasis added).

In support of his contention that the trial court improperly required mediation, David cites *Dennis v. Smith*, 962 S.W.2d 67, 74 (Tex.App.-Houston [1st Dist.] 1997, pet. denied). In *Dennis*, the First Court of Appeals determined that a trial court lacked authority to require mediation as a prerequisite to filing a motion to modify the parent-child relationship. *Id.* There, the divorce decree explicitly provided, "Mediation is a prerequisite to filing a Motion to Modify." *Id.* In addition, the divorce decree ordered the parties to attend three mediation sessions to see if they could resolve their differences. *Id.* Construing Texas Family Code sections 153.0071 and 153.134, the appellate court concluded that "the legislature intended that 'suits,' not 'disputes' be subject to mandatory mediation." *Id.*

Here, however, rather than requiring mediation, the divorce decree requires that the parties *attempt* to mediate. As indicated above, the clause at issue here provides that if the parties cannot agree on a mediator, or refuse or fail to attend mediation, the party seeking modification is free to file a modification suit. Further, the mediation clause contains an exception in the case of an emergency.

David has provided no argument or authority that a trial court lacks authority to require parties to *attempt* to mediate prior to filing suit. In addition, the Legislature has required the trial court to recommend that parties use alternative dispute resolution methods prior to requesting enforcement or modification of a joint conservatorship. *See* TEX. FAM. CODE ANN. § 153.134(b)(5). Under these circumstances, we cannot say the trial court abused its discretion by requiring the parties to attempt to mediate. We therefore overrule David's seventh issue.

## I. Conservatorship

In issues eight, nine, ten, and eleven, David contends that the trial court abused its discretion by awarding Janie the exclusive right to (1) make all medical decisions regarding A.S., (2) make all educational decisions regarding A.S., (3) consent to all psychiatric and psychological treatment for A.S., and (4) establish A.S.'s primary residence. In issue twelve, David argues that the trial court abused its discretion by failing to appoint him as sole managing conservator of the child.

■■■■■ "The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." *Id.* § 153.002. The trial court is given wide latitude in determining the best interest of a child. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982); *Turner v. Turner*, 47 S.W.3d 761, 763 (Tex. App.-Houston [1st Dist.] 2001, no pet). Unless it would not be in the best interest of the child,[16] the trial court "shall" appoint a parent as sole managing conservator, or both parents as joint managing conservators of the child. TEX. FAM. CODE ANN. § 153.131(a).

■■■■■ It is a rebuttable presumption that the appointment of the parents as joint managing conservators is in the best interest of the child. *Id.* § 153.131(b). In rendering an order appointing joint managing conservators, the court shall designate the conservator who has the exclusive right to determine the primary residence of the child. *Id.* § 153.134(b)(1). The trial court's order must also allocate between the parents, independently, jointly or exclusively the remaining rights and duties of a parent. *Id.* § 153.134(b)(4). The rights of a parent include the right to make decisions concerning the child's education, and to consent to medical and dental care as well as psychological and psychiatric treatment. *Id.* § 151.001(a)(6) & (10). "[T]he trial court retains broad discretion in crafting the rights and duties of each conservator in effectuating the best interest of the child." *London v. London*, 94 S.W.3d 139, 150 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). With these

---

16. In determining whether it is in the best interest of the child to appoint the parents as joint managing conservators, a court considers the following factors:

(1) whether the physical, psychological, or emotional needs and development of the child will benefit from the appointment of joint managing conservators;

(2) the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest;

(3) whether each parent can encourage and accept a positive relationship between the child and the other parent;

(4) whether both parents participated in child rearing before the filing of the suit;

(5) the geographical proximity of the parents' residences;

(6) if the child is 12 years of age or older, the child's preference, if any, regarding the person to have the exclusive right to designate the primary residence of the child; and

(7) any other relevant factor.
TEX. FAM. CODE ANN. § 153.134(a).

principles in mind, we examine David's issues.

### 1. Medical Care

■■■ David argues that the trial court abused its discretion in awarding Janie the exclusive right to make medical decisions for A.S. In support of his argument, he contends that Janie is "unaware of the child's true medical needs, especially in regard to the child's severe weight problem." When asked how much A.S. weighed, Janie responded "[a]bout 100–150 [pounds], around there." But after Janie testified that A.S. weighed approximately 100 or 150 pounds, David's attorney asked the following question: "If Mr. Swaab said 162, do you think he would be exaggerating?" Janie responded "No." Janie's approximation of her daughter's weight at 150 pounds does not significantly vary from David's assessment of her weight. Additionally, Janie participated with A.S. in a weight class at Texas Children's Hospital and enrolled her at Your Body.Com.[17] Janie also testified that she took walks with A.S. and purchased a bicycle and tramp oline for her.

David further argues that he has continually tried to follow the advice of doctors whereas Janie has merely wanted to consider their advice. Janie, however, testified that she did not agree with this characterization. She clarified that she takes the advice from A.S.'s pediatrician into consideration when making decisions for A.S. When asked whether it was true that, following A.S.'s eye surgery, she only kept the tube in A.S.'s eye for seven days instead of the ten days allegedly required, Janie testified that she did not recall the number of days that the tube stayed in her eye.

Janie requested that she be granted the exclusive right to make medical decisions for A.S. because she and David continually struggled over these matters and she wanted to protect A.S. from being caught in the middle of their arguments. She also testified that these arguments were repetitive and that she and David were not able to resolve their differences. In her report, Dr. Gollaher noted that David possibly suffers from Obsessive–Compulsive Disorder and "tends to overly focus on issues to the point that the message may be lost and his approach is emotionally draining." She also reported that David "leaves no room for conversation, and is unable (or unwilling) to listen to any feedback from another party."

Finally, in her interview with Dr. Gollaher, A.S. recounted an occasion when she was sick at David's home and he would not conclude his telephone conversation for five minutes after A.S. tried to speak to him. A.S. told Dr. Gollaher that her father "did not 'take care of her when she was ill, but that in contrast, her mother would have gotten off the phone....'"

Based on the above evidence, we conclude that the trial court did not act in an arbitrary and unreasonable manner, or without reference to any guiding principles, in granting Janie the exclusive right to make medical decisions regarding A.S. The trial court had sufficient information upon which to exercise its discretion and did not err in its application of that discretion. We therefore overrule David's eighth issue.

### 2. Education

■■■ In support of his contention that the trial court abused its discretion in granting Janie the exclusive right to make

---

**17.** This website provides a free exercise risk assessment by the Aerobics and Fitness Association of America and a fitness professional locator service. *See* http://www.yourbody.com.

educational decisions for A.S., David points to the following evidence: (1) he fought to hold A.S. back a year in school when it appeared that the child was "on the fence" and about to fail; (2) he has helped A.S. master schoolwork despite her struggles; (3) Janie has routinely relied on David to pick A.S. up from school; and (4) despite her "severe dyslexia," A.S. is making A's on schoolwork due to David's daily help after school.

Regarding A.S. being held back one year, the record reveals that, although she was initially reluctant to have A.S. repeat a grade, Janie ultimately agreed with the recommendation and A.S. was held back one year. The evidence supports David's assertion that he has helped A.S. with her schoolwork and that she is making A's. But in her interview with Dr. Gollaher, A.S. reported that David " 'makes it tough' with homework because he wants her to just practice versus her mother who just helps her with her assignments." She also told Dr. Gollaher that David "sometimes helps her 'too much' with assignments and that he is not prepared with projects." For example, A.S. indicated that David has a tendency to change the focus of a school project midway through the project.[18] Janie also testified that, at a parent-teacher conference that she and David attended, A.S.'s teacher asked David to "stay away for a month because he was causing too much tension for [A.S.]," although David denies that this incident occurred.

David testified that he was willing to pay the tuition of The Shlenker School, which A.S. has attended since she was 18 months old, so that A.S. could continue her studies there. Janie agreed to keep A.S. at the private school if David pays for her tuition. In fact, for the two years preceding the trial, Janie applied for and received a scholarship for A.S. to attend the school, which reduced the tuition by half. Finally, based on her findings, Dr. Gollaher recommended that Janie retain the exclusive right to make educational choices for A.S.

In light of this evidence, we conclude that the trial court did not abuse its discretion in granting Janie the exclusive right to make educational decisions for A.S. We overrule David's ninth issue.

### 3. Psychiatric and Psychological Treatment

In his tenth issue, David contends that the trial court abused its discretion by awarding Janie the exclusive right to consent to all psychiatric and psychological treatment for A.S. David points out that A.S. is having difficulty dealing with the divorce and has experienced depression and significant weight gain. He also emphasizes the fact that he was in favor of allowing the school to hold A.S. back one year after it was determined that she was having difficulty keeping up with her classmates and was "on the fence" about to fail.

As discussed above, following her initial reluctance, Janie subsequently agreed to allow the school to hold A.S. back one year. Regarding A.S.'s understandable difficulty dealing with the divorce, the fact that she has experienced depression and weight gain does not support David's contention that Janie should not have been awarded the exclusive right to consent to psychiatric and psychological treatment for A.S.

Further, Dr. Gollaher stated in her report that David possessed symptoms consistent with Attention Deficit Hyperactivity Disorder, including "the reported and

---

**18.** A.S. described a specific occasion when David changed the topic of her science project, causing her to miss the deadline for a competition. David also kept A.S. home from school to work on the project rather than allowing her to do the work on the weekend.

observed tendency to get easily distracted to the point that he fails to complete a thought or project, difficulty sustaining attention in conversation, poor time management, poor organizational capacity, failure to follow through on instructions concerning the evaluation and repeated interrupting of our conversation." In addition, she noted that David possesses symptoms suggesting a mood disorder, possibly Bipolar Disorder or Obsessive–Compulsive Disorder. His symptoms include "hoarding materials in the home, repeated focusing on perceived insults and injuries to the point they have become a center of attention . . ., rapid anger, tangential thoughts, preservation, and flight of ideas." Dr. Gollaher concluded that "[t]hese symptoms appear to markedly impact his functioning."

After an extensive evaluation, including multiple interviews with David, Janie, and A.S., observing the parties' behavior with A.S., and reviewing questionnaires completed by both parties, Dr. Gollaher recommended to the trial court that it grant to Janie the exclusive right to make psychological choices for A.S. Under these circumstances, we conclude that the trial court did not abuse its discretion in awarding Janie the exclusive right to consent to psychiatric and psychological treatment for A.S. We therefore overrule David's tenth issue.

### 4. Primary Residence

In his eleventh issue, David contends that the trial court abused its discretion by appointing Janie the joint managing conservator with the exclusive right to establish the primary residence of A.S. Specifically, he asserts that Janie has demonstrated an inability to provide A.S. with necessary attention as evidenced by the fact that Janie (1) works from 2:30 p.m. to 11:00 p.m. and has not altered her work schedule despite Dr. Gollaher's recommen-

dation that she find a different job or shift which would allow her to pick A.S. up from school, thereby easing the transition between households; (2) relies on David to care for A.S. from the time she leaves school at 4:30 p.m. until Janie returns home at 11:00 p.m.; (3) proposed using a babysitter whose name she could not remember nor did she know where the babysitter lived.

Following her separation from David, Janie worked as a radiologist from 8:00 to 5:00 p.m., or 8:30 a.m. to 5:30 p.m. Due to staffing issues, Janie was required to work night shifts from 2:30 p.m. to 11:00 p.m. for approximately seven months prior to the trial. During this period, David agreed to help out by caring for A.S. from the time she finished school at 4:30 p.m. until Janie finished work at 11:00 p.m. However, Janie testified that she expected to return to day shifts working from 10:30 a.m. to 6:30 p.m. in May 2006 (the month of trial). At that time, she would arrange for a babysitter to care for A.S. until she finished her workday. Although at trial she could not recall the name of the babysitter, Janie testified that she had the woman's information and that she had been highly recommended to her by several parents whose children also attend The Shlenker School.

The record also reflects that Janie moved from an apartment to a house with a backyard so that A.S. could have a place to play on her trampoline. Janie further testified that she intended to reside in Harris County and had no objection to such a geographical restriction. In addition, a number of photographs of David's home were presented at trial, depicting mounds of newspapers and magazines stacked throughout the house, which David conceded showed a "messy" area "full of clutter." Finally, Dr. Gollaher recommended that Janie be awarded the exclu-

sive right to establish A.S.'s primary residence in her report to the trial court.

Considering all the evidence, we conclude that the trial court did not abuse its discretion in appointing Janie as the joint conservator with the exclusive right to establish A.S.'s primary residence. Accordingly, we overrule issue eleven.

### 5. *Sole Managing Conservatorship*

■ In his twelfth and final issue, David contends the trial court abused its discretion by failing to appoint him as sole managing conservator of A.S. However, a review of the record reveals no evidence whatsoever that David actually made such a request. To the contrary, he requested on several occasions that he and Janie be appointed joint managing conservators. For example, in his Proposed Parenting Plan, David stated as follows: "It is requested that Janie Guerra Swaab and David Lawrence Swaab are appointed Joint Managing Conservators of [A.S.]" At trial, when asked about the issue of conservatorship, David testified that he was requesting that he and Janie be appointed joint managing conservators. Finally, at the hearing for entry of the divorce decree, David did not object or otherwise complain about the appointment of a joint managing conservatorship in the divorce decree. Thus, David has waived this issue on appeal, and it is overruled. *See* TEX. R. APP. P. 33.1.

## IV. CONCLUSION

In sum, David has not established that the trial court abused its discretion in determining the issues presented regarding child support and conservatorship. We have also concluded that the trial court did not err by ordering David to repay the loans owed to his mother, Ruth. Further, David's complaints regarding the division of the marital estate are without merit because the parties settled this issue by entering into a Rule 11 Settlement Agreement, which David did not repudiate before judgment was rendered. In addition, David did not preserve his complaints regarding income tax liability, the owelty lien on the Fairhope Property, and sole managing conservatorship. Finally, we conclude that David failed to show that the trial court abused its discretion regarding the amount of time it permitted for review of the proposed divorce decree and by requiring the parties to attempt mediation prior to modification of the divorce decree. Having overruled each of David's issues, we affirm the judgment of the trial court.