Affirmed
in Part and Reversed and Remanded in Part and Opinion filed October 29, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00424-CV

____________

 

MONICA FAYE KNIGHT, Appellant

 

V.

 

BOBBY WAYNE KNIGHT, Appellee

 



 

On Appeal from the 246th
District Court

Harris County, Texas

Trial Court Cause No. 2007-40318

 



 

O P I N I O N

Appellant, Monica Faye Knight, appeals the final decree of
divorce entered by the trial court in connection with her divorce from
appellee, Bobby Wayne Knight.  In one issue, Monica contends that the
trial court=s division of the marital estate was manifestly unfair
and constituted an abuse of discretion because the court (1) erroneously valued
the properties awarded to her; (2) refused to grant her reimbursement claims;
and (3) failed to factor in Bobby=s fault in the
dissolution of the marriage.  We affirm in part and reverse and remand in
part.

 

                                                             


I.  FACTUAL BACKGROUND

  Monica and Bobby entered into a common law marriage
in 1994.  On December 16, 2000, they were ceremonially married.  No
children were born of the marriage.  On July 6, 2007, Bobby filed a
petition for divorce, and on July 19, 2007, Monica filed a counter-petition for
divorce.  Following a bench trial, the trial court signed the final decree
of divorce on February 29, 2008.

During the course of their marriage, Monica and Bobby
invested in real property but failed to follow procedures necessary to preserve
the integrity of the respective marital estates.  In 1995, they purchased
two houses.  The first, located at 9310 Forest Dale (Athe Forest Dale
property@), was paid in
full in 1998.  The second one was located at 9314 Talton (Athe Talton
property@).  The two
properties, the titles to which were taken only in Bobby=s name, were used
periodically as rental properties.

In 1996, the parties purchased a house located at 8006
Mayhaw (Athe Mayhaw
property@) which became the
marital residence until their separation.  In 1998, they purchased another
house located at 9313 Forest View (Athe Forest View
property@) from Monica=s brother and sister-in-law,
Edwin and Penny Griffin.  As with the previous properties, the titles to
these two properties were taken only in Bobby=s name. 

On May 7, 1999, Bobby conveyed a 50% interest in the Forest
Dale and Talton properties to Monica.[1] 
On November 24, 1999, Bobby deeded his remaining 50% interest in the Forest
Dale and Talton properties to her.[2]

In October 2002, as a result of the damage caused by
Tropical Storm Allison, the Harris County Flood Control District purchased the
Forest View and Forest Dale properties.  On October 7, 2002, the Forest
Dale property was purchased for $63,000.  On October 18, 2002, the Forest
View property, which had a $30,000 lien, was purchased for $64,000.  On
October 16, 2002, Monica wrote a check to Bank One for $45,769.47 to retire the
mortgage on the Mayhaw property.[3]

In 2005, Monica and her sister, Wendy, each inherited a 50%
interest in a house located at 9105 Lazydale from their father=s estate.  In
2006, Monica borrowed $65,000.  This loan was secured by a home equity
lien on the Talton property, part of Monica=s separate
estate.  From the loan proceeds, $20,000 was used to purchase the
remaining 50% interest in 9105 Lazydale from Wendy, and $40,000 was used to
purchase a house located at 9109 Lazydale that had been inherited by Rommel
Griffin, Monica=s brother.  Monica testified that the
latter sale was subject to a promise that in the event she decided to sell the
house, she would first offer to sell it back to Rommel for $40,000.  The
remaining $5,000 was used to re-roof the two Lazydale properties.

In addition to the real property above, the parties= other marital property
subject to division by the court included Monica=s 401(k), ten
cemetery plots, Monica=s car, and Bobby=s truck.

 

In her pleadings and at trial, Monica sought a
disproportionate division of the community estate based on, among other things,
fault in the breakup of the marriage, fraud on the community, community
indebtedness, wasting of community assets and the creation of community
property through the use of her separate estate.  Additionally, she sought
reimbursement to the community for funds expended by the community estate for
the payment of unsecured liabilities of Bobby=s separate
estate.  

In support of her claim that Bobby was at fault for the
break-up of the marriage, Monica testified that Bobby left her four times
during the marriage, leaving only a note each time.  On the third
occasion, he staged his own abduction and left a $50,000 ransom note. 
After returning home, he told Monica that his abductors were going to kill her
and Ado something to
her entire family@ if she did not pay the ransom. 
Monica testified that, due to this incident, she suffered a breakdown. 
She also testified that Bobby had become obsessed with pornography during the
marriage and, as a result, refused intimacy with her.  Bobby did not
dispute this testimony.

In support of her claim of fraud on the community, Monica
testified that Bobby had paid his ex-wife $500 a month for eighteen months
while Monica and Bobby were married.  Bobby testified that he paid his
ex-wife longer than ordered to do so by the court so that she could complete
her college studies and obtain a degree.  He further testified that Monica
knew about the payments when they began dating, but admitted later telling her
that he had stopped paying his ex-wife.  In addition, Monica claimed that
Bobby had paid a separate property judgment debt in the amount of $8,139.84
with community funds.

 

At the conclusion of trial, the court orally rendered its
judgment.  On February 29, 2008, the court signed the final divorce
decree, granting the divorce on the grounds of insupportability and mental
cruelty.  In the decree, the court confirmed a 50% interest in 9105
Lazydale and a 100% interest in the Talton property, subject to and with the
assumption of the $65,000 mortgage, as Monica=s separate
property.[4]  In dividing the community estate,
the court awarded the following property to Monica: (1) her 401(k); (2) her
car; (3) the Mayhaw property, subject to a $42,000 promissory note to Bobby;
(4) a 25% interest in 9105 Lazydale (in addition to the 50% interest confirmed
as her separate property); (5) a 50% interest in 9109 Lazydale; and (6) 50% of
the cemetery plots, subject to 50% of the debt.  The court awarded the
following property to Bobby: (1) his truck; (2) a 25% interest in 9105
Lazydale; (3) a 50% interest in 9109 Lazydale; (4) a $42,000 promissory note
secured by the Mayhaw property; (5) and 50% of the cemetery plots, subject to
50% of the debt.

Following entry of the final divorce decree, Monica filed a
request for findings of fact and conclusions of law.  After she filed a
notice that they were past due, the court filed its findings and
conclusions.  Monica filed a motion for new trial which the trial court
denied.  Monica timely filed her notice of appeal.

II.  STANDARD OF REVIEW

We review a trial court=s division of
community property for an abuse of discretion.  Murff v. Murff, 615
S.W.2d 696, 698 (Tex. 1981).[5] 
The test for an abuse of discretion is whether the trial court acted arbitrarily
or unreasonably, or whether it acted without reference to any guiding rules or
principles.  Swaab v. Swaab, 282 S.W.3d 519, 524 (Tex. App.CHouston [14 Dist.]
2008, pet. dism=d w.o.j.).  A trial court=s division need
not be equal and may take into consideration many factors, such as the spouses= capacities and
abilities, benefits which the party not at fault would have derived from a
continuation of the marriage, business opportunities, education, relative
physical conditions, relative financial conditions and obligations, disparity
in age, size of separate estates, the nature of the property, and disparity in
income and earning capacity.  See Murff, 615 S.W.2d at 699; Markowitz
v. Markowitz, 118 S.W.3d 82, 90B91 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied).

A trial court does not abuse its discretion if there is
some evidence of a substantive and probative character to support the
decision.  See LaFrensen v. LaFrensen, 106 S.W.3d 876, 877 (Tex.
App.CDallas 2003, no
pet.).  However, because the trial court=s discretion is
not unlimited, there must be some reasonable basis for an unequal division of
the property.  See Smith v. Smith, 143 S.W.3d 206, 214 (Tex. App.CWaco 2004, no
pet.).  Under an abuse of discretion standard, the legal and factual
sufficiency of the evidence are not independent grounds of error, but are
merely relevant factors in assessing whether an abuse of discretion has
occurred.  See Stavinoha v. Stavinoha, 126 S.W.3d 604, 608 (Tex.
App.CHouston [14th
Dist.] 2004, no pet.).

III.  DIVISION OF MARITAL ESTATE

In its findings and conclusions, the trial court identified
the assets of the community estate and valued them as follows:

Asset                                                                   
Value

(1) the Mayhaw
property                                       
$87,000.00

(2) 9109
Lazydale                                                 
$53,173.00

(3) 50% interest
in 9105
Lazydale                
          $25,868.50

(4) Monica=s
401(k)                                               
$44,223.53

 

(5)
Cemetery Plots

(a) Lot 337,
Section 48, Spaces 4 &
5           $4,640.66

 

(b) Lot 337, Section 48, Spaces 5
& 6           $4,672.00
(amount owed: $2,883.90)

 

(c) Lot 336, Section 48, Spaces 1-
6             $15,930.50
(amount owed: $14,725.92)

(6) Bobby=s
truck                                                  
$0

(7) Monica=s
car                                                   
$7,000.00

In the final decree, the court
divided the community property between the parties as

follows:

 

Monica                                                                
Value

(1) the Mayhaw
property                                       
$45,000.00

($87,000 - $42,000 promissory note
to Bobby)

 

(2) 50% interest
in 9109
Lazydale                          
$26,586.50

(3) 25% interest
in 9105
Lazydale                          
$12,934.25

(4) Monica=s
401(k)                                               
$44,223.53

(5) Monica=s
car                                                   
$7,000.00

(6) 50% interest in cemetery plots
($12,621.58)      $3,816.67

B 50% of balance due ($8,804.91)[6]

Total
Value of Award                                          
$139,560.95

Bobby                                                                  
Value

 

(1) 50% interest
in 9109
Lazydale                          
$26,586.50            

(2) 25% interest
in 9105
Lazydale                          
$12,934.25

(3) promissory
note on Mayhaw
property               
$42,000.00

(4) 50% interest in cemetery plots
($12,621.58)      $3,816.67

B 50% of balance due ($8,804.91)

(5) Bobby=s
truck                                                  
$0

Total
Value of Award                                          
$85,337.42

In the decree and its findings and conclusions, the court
also identified the following assets as Monica=s separate
property and valued them as follows:

Asset                                                                   
Value

(1) 50% interest
in 9105
Lazydale                          
$25,868.50

(2) the Talton
property[7]                                         
$72,383.00

(3) Monica=s father=s
truck                                    
$500.00

(4) all of the jewelry, household
items,                   
no value provided

furnishings, and fixtures listed on
Monica=s

Inventory

IV.  ANALYSIS

 

On appeal, Monica contends that the trial court=s division of the community
estate was manifestly unjust and constituted an abuse of discretion. 
Specifically, she complains that the court failed to take into account (1) the
$7,000 loan against her 401(k) and (2) the $65,000 home equity loan against the
Talton property in its valuation of those assets.  She also challenges the
court=s refusal to
reimburse (1) her separate estate for the $45,769.47 in loan proceeds from the
sale of the Forest Dale property used to pay off the mortgage on the Mayhaw
property, and (2) the community estate for payment of Bobby=s separate
property judgment debt and payments to Bobby=s ex-wife. 
Further, Monica contends that although the trial court granted the divorce, in
part, on the ground of mental cruelty, it failed to consider such cruelty in
its division.

A.     
Waiver

As to her claims regarding the court=s valuation of her
401(k) and its refusal to reimburse her separate estate for the $45,769.47 in
loan proceeds from the sale of the Forest Dale property used to pay off the
Mayhaw property mortgage, Monica has waived these complaints on appeal. 
To preserve an issue for appellate review, a party must bring her complaint to
the trial court=s attention by timely request, objection,
or motion.  See Tex. R. App.
P. 33.1; Swaab, 282 S.W.3d at 527 (concluding husband=s failure to
complain to trial court about provision in divorce decree ordering him to
assume 100% of federal income tax liability that arose during marriage failed
to preserve issue for appellate review).  If the matter is not presented
to the trial court, the trial court has no opportunity to rule on the issue or
to correct its ruling if it is made in error.  In re Marriage of
Lendman, 170 S.W.3d 894, 898 (Tex. App.CTexarkana 2005, no
pet.) (noting trial court has no opportunity to rule on issue or to correct
ruling made in error where matter is not presented to court) (citing Lewis
v. Tex. Employers Ins. Ass=n, 151 Tex. 95, 246
S.W.2d 599, 600 (1952)); see also In re D.W., 249 S.W.3d 625, 643B44 (Tex. App.CFort Worth 2008,
pet. denied) (recognizing goals of civil trial and appellate procedural schemes
include providing trial court ample opportunity at every step of trial
proceedings to cure its errors, grant new trial when needed, and allow
meritorious claims to be reviewed and corrected on appeal).

 

A review of the record indicates that Monica did not
present her complaints to the trial court regarding its valuation of her 401(k)
and its refusal to reimburse her separate estate for the $45,769.47 in loan
proceeds from the sale of the Forest Dale property.  She did not object
when the court orally rendered its judgment at the conclusion of the hearing or
raise the issues in her motion for new trial.  See Swaab, 282
S.W.3d at 530B31 (finding husband=s failure to
object to imposition of lien on his separate property, or otherwise bring
complaint to trial court=s attention, waived any error on appeal);
Stallworth v. Stallworth, 201 S.W.3d 338, 349 (Tex. App.CDallas 2006, no
pet.) (concluding wife=s failure to complain of discrepancy between
trial court=s oral rendition and final divorce decree related to
division of retirement proceeds waived any error on appeal).  Having
failed to present her complaints regarding the court=s valuation of her
401(k) and its refusal to reimburse her separate estate for the $45,769.47 in
loan proceeds from the sale of the Forest Dale property to the trial court,
Monica has waived these issues on appeal.  See Tex. R. App. P. 33.1. 

B.     
Bobby=s Separate Property Debt

Monica contends that the trial court erred in refusing to
reimburse the community for the payment of Bobby=s separate
property judgment debt in the amount of $8,139.84.  In her pleadings,
Monica sought reimbursement to the community for funds expended by the
community estate for the payment of unsecured liabilities of Bobby=s separate
estate.  See Vallone v. Vallone, 644 S.W.2d 455, 459 (Tex. 1982)
(noting party claiming right of reimbursement must plead and prove expenditures
were made and are reimbursable).

 

A party may bring a claim for reimbursement of payments by
one marital estate to satisfy unsecured liabilities of another marital
estate.  Tex. Fam. Code Ann. ' 3.408(b)(1)
(Vernon 2007).  AThe right of reimbursement is not an
interest in property or an enforceable debt, per se, but an equitable right
which arises upon dissolution of the marriage . . . .@  Vallone,
644 S.W.2d at 458B59.  A[T]he payment by
one marital estate of the debt of another creates a prima facie right of
reimbursement.@  Penick v. Penick, 783 S.W.2d 194, 196
(Tex. 1988).

At trial, Bobby testified that he took out a loan against
his truck to pay off his separate property judgment debt.[8] 
He admitted that although Monica had not contributed to the debt, he used
community property funds to extinguish it.  In the decree and its findings
and conclusions, the court characterized the truck as part of the community
estate subject to division but made no mention of the community funds used to
pay off the debt.

The undisputed evidence shows that Bobby=s separate
property judgment was paid by community property funds.  We therefore
conclude that the trial court=s refusal to reimburse the community for one-half
of the community funds used to pay Bobby=s separate property judgment debt was
unsupported by the evidence and an abuse of discretion.  See Zieba v. Martin, 928 S.W.2d 782,
790 (Tex. App.CHouston [14th Dist.] 1996, no pet.).

C.     
Payments to Ex-Wife

Monica asserts that the trial court erred in failing to
reimburse the community estate for the community funds Bobby used to pay his
ex-wife.

 A fiduciary duty exists between a husband and a wife
as to the community property controlled by each spouse.  Zieba, 928
S.W.2d at 789.  The breach of a legal or equitable duty which violates
this fiduciary relationship existing between spouses is referred to as Afraud on the
community,@ a judicially created concept based on the theory of
constructive fraud.  Id.  Any such conduct in the marital
relationship is termed fraud on the community because, although not actually
fraudulent, it has all the consequences and legal effects of actual fraud
because such conduct tends to deceive the other spouse or violate confidences
that exist as a result of the marriage.  Id.

 

A presumption of constructive fraud arises where one spouse
disposes of the other spouse=s one‑half interest in community
property without the other=s knowledge or consent.  Id.; Jackson
v. Smith, 703 S.W.2d 791, 795 (Tex. App.CDallas 1985, no
writ).  In that circumstance, the burden of proof to show fairness in
disposing of community assets is upon the disposing spouse.  See Zieba,
928 S.W.2d at 789; Morrison v. Morrison, 713 S.W.2d 377, 379 (Tex. App.CDallas 1986, writ
dism=d).  In
considering a claim of constructive fraud, the court may consider three
factors:  (1) the size of the gift in relation to the total size of the
community estate;  (2) the adequacy of the remaining estate;  and (3)
the relationship of the donor to the donee.  Zieba, 928 S.W.2d at
789.

Monica testified that, in May 1996, she discovered that
Bobby had been paying his ex-wife $500 a month for approximately eighteen
months.  She further testified that Bobby=s checkbook
reflected that he had made the last payment in July 1995.  Bobby testified
that Monica knew about the payments to his ex-wife when they first began
dating, but admitted later telling her that he had stopped the payments. 
He further admitted that he paid his ex-wife longer than required to do so by
the court so that he could help her finish college and obtain a degree. 
There is no mention of these payments in the final decree or in the court=s findings of fact
and conclusions of law.

 

The trial court found that the parties had entered into an informal marriage on
July 10, 1994.  Monica presented uncontroverted evidence that Bobby
paid his ex-wife $500 a month until July 1995.  There is no evidence to
suggest, nor does Bobby contend, that he used separate property funds to pay
his ex-wife and, thus, we presume that community funds were used.  See
Smith v. Smith, 22 S.W.3d 140, 144 (Tex. App.CHouston [14th
Dist.] 2000, no pet.) (noting that to overcome community property presumption,
spouse claiming certain property as separate property must trace and clearly
identify property claimed to be separate).  Although Bobby testified that
Monica knew about the payments when they first started dating, there is no
evidence that Monica consented to the payments after they became common law
married.  See Zieba, 928 S.W.2d at 790 (finding trial court abused
its discretion in refusing to reimburse community for husband=s $100,000 cash
withdrawal from bank account where there was no evidence wife consented to
withdrawal although wife testified she knew about withdrawal and did not question
husband about it).  Moreover, Bobby admitted having deceived Monica about
the payments and testified that he continued to pay his ex-wife longer than
ordered to do so by the court.  Cf. Zieba, 928 S.W.2d at 790
(finding no fault with trial court=s refusal to
reimburse community for funds spent by husband on obligations arising from
prior marriage because obligations were imposed on husband by court
order).  When asked why he continued to pay his ex-wife during his
marriage to Monica, Bobby testified that   his ex-wife was not
receiving help from anyone else and he wanted to help her obtain her degree.  We conclude that the trial
court should have reimbursed the community for the payments to Bobby=s ex-wife made between July 1994 and
July 1995, and awarded Monica=s community assets one-half of the value.  Its refusal
to do so was an abuse of discretion.  See id.[9]

D.       
Talton Property Mortgage

Monica
also complains that the trial court failed to factor in the $65,000 home equity
loan in its valuation of the Talton property.  She argues that this debt
was a community debt and should have been considered by the court when it
valued the asset.

 

In 1995,
the couple purchased the Talton property, the title to which was taken only in
Bobby=s name.  In November 1999, Bobby
deeded 100% of his interest in the property to Monica via special warranty
deed.  In 2006, Monica borrowed $65,000 and granted a home equity lien
against the Talton property to secure the loan.  In the final decree, the
court confirmed the Talton property as Monica=s separate property and awarded it to
her Asubject to and with the assumption of
the mortgage in the original principal amount of $65,000 ....@  In its findings, the court
found that Bobby had gifted the Talton property to Monica during the marriage
and valued it at $72,383.00.  In its conclusions, the court stated that
the Talton property was part of Monica=s separate estate.

Bobby
argues that the evidence supports the court=s finding that the $65,000 loan was
Monica=s separate property debt.  We
agree.  The special warranty deed, the parties= testimony that Bobby deeded all of
his interest in the property to Monica, the promissory note for $65,000
reflecting Monica as the sole borrower, and the homestead lien contract and
deed of trust bearing Monica=s name as Aowner@ of the Talton property constitute substantive and probative
evidence to support the court=s finding that the Talton property was Monica=s separate property.  We also
note that Monica testified that the Talton property was her separate property.  See
Love v. Bailey-Love, 217 S.W.3d 33, 35 (Tex. App.CHouston [1st Dist.] 2006, no pet.)
(concluding that obligation to pay student loans constituted spouse=s separate debt and trial court erred
in assigning repayment obligation to non-incurring spouse).[10]

 

However,
although the trial court properly characterized the $65,000 loan as Monica=s separate property debt, it erred in
failing to factor in the debt in its valuation of the Talton property. 
Instead, in its findings, the court valued the Talton property at $72,383.00
without considering the outstanding $65,000 loan.  When the loan is taken
into account, the value of Monica=s separate estate is reduced by
two-thirds.  The erroneous valuation of Monica=s separate estate
would presumably impact the trial court=s determination of
a just and equitable division of the community estate.  See Murff,
615 S.W.2d at 699 (stating that trial court may consider many factors in
deciding the estates of the parties, including the size of their separate
estates); Padon v. Padon, 670 S.W.2d 354, 359 (Tex. App.CSan Antonio 1984,
no writ) (holding that trial court may consider a spouse=s separate
property when dividing the spouses= estates).

In summary, we conclude that the trial court abused its
discretion in refusing to reimburse the community estate for (1) one-half of
the community funds used to extinguish Bobby=s separate
property judgment debt, and (2) one-half of the community payments to Bobby=s ex-wife. 
We also find that the court erred in failing to factor in the outstanding
$65,000 loan in its valuation of the Talton property.  Given the court=s errors on Monica=s reimbursement
claims and in its valuation of her separate estate, we find that the trial
court could not properly exercise its discretion in making a just and right
division of the community estate.  This is particularly true in light of
the undisputed evidence of Bobby=s fault in the
break-up of the marriage and the fact that the court granted the divorce, in
part, on the ground of Bobby=s mental cruelty.  Issue one is
sustained.

                                               
V.  CONCLUSION

Accordingly, we affirm the portion of the trial court=s judgment
granting the divorce, reverse the portion of the judgment dividing the marital
estate, and remand the case for a new trial on the just and right division of
the parties= property in accordance with this opinion.

/s/      Adele Hedges

Chief Justice

 

Panel
consists of Chief Justice Hedges and Justices Yates and Frost.














[1]  In 1999, due to marital difficulties, Bobby left Monica for
two weeks.  After he returned, he offered to place the Forest Dale and
Talton properties in both of their names.  According to Bobby, his
intention in conveying the interests was to allay Monica=s concern that he might mortgage or
sell them without her consent.  However, Monica testified that he did so
to assure her that he would not leave her again.





[2]  The parties also dispute the reason for this
subsequent transfer.  At trial, Bobby testified that they jointly decided
to deed the entire interest in the properties to her to prevent the assets from
being seized to satisfy a separate property judgment against him. 
However, Monica maintains that he deeded the entire interest in those
properties to her to again reassure her that he would not leave her.





[3]  The parties dispute the source of the funds
used to retire the mortgage on the Mayhaw property.  Monica contends that
only the proceeds from the sale of the Forest Dale property were used, but
Bobby asserts that the combined proceeds from the sale of the Forest Dale and
Forest View properties were used. In light of our disposition of this appeal,
we need not make this determination.





[4]  Monica=s
separate property also included her father=s 1977
Chevrolet truck and the jewelry, household items, furnishings, and fixtures
listed on her Inventory and Appraisement filed with the court.  Bobby=s separate property consisted of a gold wedding ring,
gold watch, and gold rope chain.  The parties do not dispute these
findings. 





[5]  In a divorce decree, the trial court Ashall order a division of the estate of the parties in
a manner that the court deems just and right, having due regard for the rights
of each party and any children of the marriage.@  Tex. Fam. Code Ann. ' 7.001 (Vernon 2006).


 





[6]  In her brief, Monica values a 50% interest in
these plots at $12,621.98, and 50% of the debt at $3,521.96, resulting in an
award to each party of $9,100.02.  The source for her calculation of the
outstanding debt is unclear.  Our valuation of the debt on this property
is based on the Aamounts owed@ 
reflected in the trial court=s findings and
conclusions.





[7]  Although the trial court found that Bobby and
Monica had acquired the Talton property during their marriage, it also found
that Bobby had deeded the property to Monica as a gift and, therefore, it
belonged to her separate estate.





[8]  Bobby incurred the debt due to repossession of
a mobile home.





[9]  This calculation is based on the court=s finding that the parties became informally married
in July 1994 and the uncontroverted evidence that Bobby made monthly payments
of $500 to his ex-wife until July 1995.     





[10]  In a related argument, Monica contends that if the $65,000
home equity loan against the Talton property is, in fact, her separate property
debt, then the trial court mischaracterized the one-half interest in 9105
Lazydale and 9109 LazydaleCwhich were purchased with the proceeds of the $65,000 loanCas community property.  Having
failed to file a request for specified additional or amended findings or
conclusions regarding the characterization of the Lazydale properties after the
trial court filed its original findings and conclusions, Monica has waived her
right to complain about this issue on appeal.  See Smith, 22 S.W.3d
at 149; see also Operation Rescue-Nat=l v. Planned Parenthood of Houston
and Southeast Texas, Inc., 937 S.W.2d 60, 82 (Tex. App.CHouston [14th Dist.] 1996), aff=d as modified, 975 S.W.2d 546 (Tex. 1998)
(concluding that by failing to request additional findings, appellants waived
right to complain about omitted or incorrect findings).