Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



**MEMORANDUM OPINION**

No. 04-10-00109-CV

Brian Keith **MACGILLIVRAY**,
Appellant

v.

Georgia Lee **MACGILLIVRAY**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-15198
Honorable John D. Gabriel, Jr., Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
            Phylis J. Speedlin, Justice
            Rebecca Simmons, Justice

Delivered and Filed:  June 1, 2011

AFFIRMED

Appellant Brian Keith MacGillivray ("Brian") and Appellee Georgia Lee MacGillivray ("Georgia") were high school sweethearts who reunited at a high school reunion. They married in 2003 and have two children. Brian, a doctor, opened a concierge practice and supplemented his income by working in an emergency room. Georgia worked as a contract physical therapist. After a jury trial, Georgia was awarded the exclusive right to designate the primary residence of

the children. The trial court then determined the remaining issues. Brian now brings multiple issues on appeal. We overrule all issues and affirm the judgment of the trial court.

### A. Attorney's Fees

Brian argues the trial court erred in awarding attorney fees because the jury failed to answer the question on attorney's fees in the charge and because Georgia did not object to the jury's failure to answer the question. Georgia responds that the trial court did not err because the parties agreed to allow the trial court to decide the attorney's fees issue. In support, Georgia points to the final decree, which recites that "[b]y agreement of the parties as stated in open Court, the judge . . . made rulings and findings on all remaining matters, *including attorney's fees . . . .*" (emphasis added). Brian counters that if the parties made such an agreement, the trial court erred in enforcing it because there is no record of any such agreement that complies with Texas Rule of Civil Procedure 11.

At a post-trial hearing, Brian objected to the trial court considering the issue of attorney's fees, arguing that because the jury had failed to answer the question and because Georgia had failed to object to that omission, Georgia had waived any award of fees. Georgia's counsel then stated to the court that the parties had agreed during the trial to submit the issue of attorney's fees to the trial court and that this agreement was recited in open court at the bench. The trial court also remembered the parties making that agreement in open court during the trial.

Rule 11 provides that "[n]o agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11. Brian argues that because the agreement is not reflected in the reporter's record, it does not comply with Rule 11. However, under similar facts, the Texas Supreme Court held in *City of Houston v.*

*Clear Creek Basin Authority*, 589 S.W.2d 671, 677 (Tex. 1979), that Rule 11 "is satisfied if the oral waiver or agreement made in open court is described in the judgment or an order of the court." Here, the final decree recites that the parties agreed in open court to submit the attorney's fees issue to the trial court. Therefore, Rule 11 was satisfied. *See id.*

B. *Child Support*

Brian argues the trial court abused its discretion in awarding child support in excess of the statutory guidelines without making sufficient findings in support of such excess. In awarding child support, a trial court has discretion to deviate from the statutory guidelines. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996); *see also* TEX. FAM. CODE ANN. § 154.123(a) ("The court may order periodic child support payments in an amount other than that established by the guidelines if the evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines."). Section 154.126(a) of the Texas Family Code provides that if the obligor's net resources exceed $7,500, the trial court shall presumptively apply the percentage guidelines to the portion of the obligor's net resources that does not exceed $7,500.00. TEX. FAM. CODE ANN. § 154.126(a). "Without further reference to the percentage recommended by these guidelines, the court may order additional amounts of child support as appropriate, depending on the income of the parties and the proven needs of the child." *Id.* In making such an award, the trial court should subtract the presumptive award from the proven needs of the child. *Id.* § 154.126(b). "After the presumptive award is subtracted, the court shall allocate between the parties the responsibility to meet the additional needs of the child according to the circumstances of the parties." *Id.* "However, in no event may the obligor be required to pay more child support than the greater of the presumptive amount or the amount equal to 100 percent of the proven needs of the child." *Id.*

The "needs of the child" is not limited to the "bare necessities of life." *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 417 n.3 (Tex. 1993). The trial court must determine what the needs are on a case-by-case basis by following the "paramount guiding principle: *the best interest of the child*." *Id.* (emphasis in original). Further, in determining whether to deviate from the guidelines, the trial court considers evidence of "all relevant factors," including the following:

1) the age and needs of the child;

2) the ability of the parents to contribute to the support of the child;

3) any financial resources available for the support of the child;

4) the amount of time of possession of and access to a child;

5) the amount of the obligee's net resources, including the earning potential of the obligee if the actual income of the obligee is significantly less than what the obligee could earn because the obligee is intentionally unemployed or underemployed and including an increase or decrease in the income of the obligee or income that may be attributed to the property and assets of the obligee;

6) child care expenses incurred by either party in order to maintain gainful employment;

7) whether either party has the managing conservatorship or actual physical custody of another child;

8) the amount of alimony or spousal maintenance actually and currently being paid or received by a party;

9) the expenses for a son or daughter for education beyond secondary school;

10) whether the obligor or obligee has an automobile, housing, or other benefits furnished by his or her employer, another person, or a business entity;

11) the amount of other deductions from the wage or salary income and from other compensation for personal services of the parties;

12) provision for health care insurance and payment of uninsured medical expenses;

13) special or extraordinary educational, health care, or other expenses of the parties or of the child;

14) the cost of travel in order to exercise possession of and access to a child;

15) positive or negative cash flow from any real and personal property and assets, including a business and investments;

16) debts or debt service assumed by either party; and

17) any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parties.

*Id.* § 154.123(b).

Brian was ordered to pay $2,600.00 per month in child support, an amount that deviates from the statutory guidelines. In deviating from the guidelines, the trial court made the following findings:[1]

1.  The net resources of Brian MacGillivray per month is at least $20,400.00

2.  The net resources of Georgia MacGillivray per month is $1698.77.

3.  The percentage applied to the first $7,500.00 of Brian MacGillivray's net resources for child support is 25%, which results in a child support figure of $1,875.00 per month.

4.  The percentage applied to Brian MacGillivray's remaining net resources of $12,900.00 for child support is 5.62%, which results in an additional $725.00 per month in child support.

5.  The total percentage applied to Brian MacGillivray's net resources of $20,400.00 per month for child support is 12.75%, which results in a total child support award of $2,600.00.

6.  The specific reasons that the amount of child support per month ordered by the court varies from the amount computed by applying the percentage guidelines under section 154.125 of the Texas Family Code are as follows:

    a.  Brian MacGillivray's net resources exceed the maximum monthly amount referenced in section 154.125 of the Texas Family Code by $12,900.00;

    b.  The cost of the proven needs of the children exceeds $5,000.00 per month;

    c.  The amount of child support calculated under the guidelines for the first $7,500.00 of Brian MacGillivray's net resources would result in a child support

---

[1] On February 8, 2011, noting that Brian had complained in his brief that the trial court had failed to make findings pursuant to section 154.130(b) of the Texas Family Code, we abated this appeal to the trial court so that it could make such findings. We then allowed the parties to file supplemental briefing.

obligation of $1,875.00 per month, which, when combined with the net resources of Georgia MacGillivray, would result in total net resources that is at least $1,426.23 per month less than the proven needs of the children. Such an award would not be in the best interest of the children, and would be unjust and inappropriate; and

d.  A total child support award of $2,600.00 per month is justified and proper in this case because

    i.  such an award is in the best interest of the children;

    ii.  such an award is necessary given the age and proven needs of the children;

    iii.  such an award is appropriate and justified given the ability of the parents to contribute to the support of the children; and

    iv.  such an award is appropriate and justified considering the financial resources available to each parent to support the children.

On appeal, Brian argues that the proven needs supported by the record equal no more than $2,083.00. Thus, Brian argues that by ordering him to pay $2,600.00 per month in child support, the trial court has required he pay an amount in excess of 100 percent of the proven needs of the children in violation of section 124.126(b). In concluding that the proven needs of the children equal no more than $2,083.00, Brian refers to Trial Exhibit 100, an exhibit introduced by Georgia and admitted in evidence without objection. In referring to Exhibit 100, Brian argues that the proven needs of the children should equal $2,083.00 per month. In making this conclusion, Brian removes certain items that were included in Exhibit 100's list of expenses for the children. For example, Brian deducts $425 from his daughter's monthly proven needs, arguing that because his daughter now attends school, she no longer needs child care. However, Georgia's exhibit *was not objected to at trial* and is evidence that her daughter has the need for child care. We cannot assume that because Georgia and Brian's daughter is now attending school means that Georgia, a working mother, does not incur child care expenses, such as after-school care, for her daughter. *See* TEX. FAM. CODE ANN. § 154.123(b)(6) (explaining that in deviating

from guidelines, court can consider child care expenses incurred by either party in order to maintain gainful employment); *In re Gonzalez*, 993 S.W.2d 147, 160 (Tex. App.—San Antonio 1999, no pet.) (holding that expenses for nanny were included within proven needs of the child). Brian also removes recurring annual expenses for the children in the form of Christmas presents, birthday presents, birthday parties, and vacations, arguing that he can provide those needs to the children himself. However, Brian points to no authority that prohibits the trial court from considering such expenses as a "need" of the children. Indeed, while the "needs of the child" are not so expansive as to encompass the most extravagant demands, the trial court is given broad discretion to determine the needs of the child. *See Scott v. Younts*, 926 S.W.2d 415, 422 (Tex. App.—Corpus Christi 1996, writ denied). And, when the monthly cost of these expenses is combined with Georgia's child care cost for her daughter, the proven needs of the children exceed Brian's court-ordered child support of $2,600. Therefore, the trial court did not require Brian to pay an amount in excess of 100 percent of the proven needs of the children in violation of section 124.126(b).

Brian also complains that the trial court abused its discretion in deviating from the guidelines because of his "steep monthly debt level." However, given the trial court's finding that Brian has monthly net resources of more than $20,000, we find no abuse of discretion in the trial court ordering Brian to pay $2600 per month in child support.

### C. Temporary Spousal Support

Brian argues that the trial court erred in awarding temporary spousal support to Georgia through January 31, 2010, and in ordering him to pay temporary car payments and car insurance payments through January 31, 2010. We disagree.

On November 14, 2008, the trial court ordered Brian to pay temporary spousal support to Georgia in the amount of $1,200 per month. The trial court also ordered Brian to make temporary car payments and car insurance payments. The temporary orders specifically stated that they would continue in force until the signing of the final divorce decree or until further order of the court. On September 29, 2009, during the jury trial regarding conservatorship, the parties proved up their divorce and the trial court orally granted the divorce: "Proved up the divorce? Want me to grant it today? Okay. Divorce is granted." On October 1, 2009, the jury returned its verdict by finding that Georgia should have the exclusive right to designate the primary residence of the children. On December 1, 2009, the trial court held a hearing regarding the remaining issues of property division, spousal support, child support, and visitation. During that hearing, the trial court orally denied Georgia's request for spousal support and stated how the property should be divided among the parties. On February 9, 2010, the trial court signed the final order, which specifically stated that the temporary orders "shall remain in full force and effect until January 31, 2010."

Pointing to the oral pronouncement of divorce on September 29, 2009, Brian argues that because the trial court rendered an oral judgment that day, Georgia was not entitled to temporary spousal support after September 29, 2009. Brian further argues that he was not required to make the temporary car payments and car insurance payments after September 29, 2009. In making this argument, Brian emphasizes that under the law, judgment is rendered when the court makes an official announcement, either in writing or orally in open court, of its decision on the matter submitted for adjudication and that once a judgment is rendered by oral pronouncement, the entry of a written judgment is purely a ministerial act. *James v. Hubbard*, 21 S.W.3d 558, 561 (Tex. App.—San Antonio 2000, no pet.). However, in order to be an official judgment, the trial

court's oral pronouncement must indicate intent to render a full, final, and complete judgment at that point in time. *In re Marriage of Joyner*, 196 S.W.3d 883, 886 (Tex. App.—Texarkana 2006, pet. denied). That is, the trial court's words, whether spoken or written, must evince a present, as opposed to future, act that effectively decides the issues before the court. *Id.* at 887. Here, there was no such intent by the trial court. On September 29, 2009, *during the jury trial*, the trial court stated that the parties were divorced *before the jury had rendered its decision and before the trial court had decided the remaining issues.* Thus, the trial court's oral pronouncement on September 29, 2009, was not a full, final, and complete judgment.

Brian alternatively argues that the trial court's oral rulings at the December 1, 2009, hearing should be considered the final judgment and thus Georgia is not entitled to temporary spousal support after December 1, 2009. In making this argument, he also argues that he was not required to make the temporary car payments and car insurance payments after December 1, 2009. However, the temporary orders specifically stated that they would remain in effect until the final judgment *was signed* or until further order of the court. The trial court made no ruling on December 1, 2009, relating to *temporary* spousal support or relating to other *temporary* orders.

Brian next argues that the trial court had no authority to award temporary spousal support after the December 1, 2009, oral pronouncement because the oral pronouncement made the judgment final that day and because the trial court may award temporary spousal support only while a case is "pending." Thus, Brian argues because the judgment was final on December 1, 2009, the case was no longer pending after that date. However, the case was indeed still pending. Even if the trial court's oral ruling on December 1, 2009, is considered the trial court's full, final, and complete judgment, the trial court retains plenary power and has discretion to issue a written

decree that is modified from its oral ruling. *Cash v. Cash*, No. 03-04-00560-CV, 2005 WL 1787552, at *3 (Tex. App.—Austin 2005, no pet.); *Cook v. Cook*, 888 S.W.2d 130, 132 (Tex. App.—Corpus Christi 1994, no writ); *Louwien v. Dowell*, 534 S.W.2d 421, 422 (Tex. App.—Dallas 1976, no writ). Thus, the trial court had authority to state in its final written judgment that Georgia would receive temporary support until January 31, 2010.[2]

### D. Rights and Duties of the Parents

The jury answered Question No. 1 of the charge by stating Georgia should be the joint managing conservator with the exclusive right to designate the primary residence of the children. Brian argues that the jury's answer is not supported by the evidence. We review the jury's answer under traditional legal and factual sufficiency standards. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In so reviewing, we keep in mind that the jury is the sole judge of the credibility of witnesses and the weight to be given their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). Further, we may not substitute our judgment for that of the jury, even if we would reach a different finding based on the evidence. *Id.*

Brian argues that the evidence is factually insufficient to support the jury's finding. He emphasizes that the court-appointed social worker, Colette Duciaume Wright, recommended that he be given the right to designate the children's primary residence. However, while the jury heard the social worker's recommendation, it also heard her testify that this was the first contested custody case in which she had testified; that she had failed to perform an adequate investigation; that she was unfamiliar with the Family Code's standard possession order; and that

---

[2] Brian also argues that because Georgia was not entitled to temporary spousal support payments after the oral pronouncement, she should not be awarded any attorney's fees related to her motion to enforce. However, because we have held that the trial court did not err in awarding Georgia temporary spousal support, it also did not err in awarding her attorney's fees relating to her motion to enforce.

she relied on psychological testing performed on Georgia eight years ago without talking to the psychologist who administered the testing, Dr. Dina Trevino. Indeed, during her testimony, Dr. Trevino was highly critical of Wright relying on this testing from eight years earlier and of the manner in which Wright used the testing to arrive at a recommendation in this case.

Further, there was evidence that Georgia had been the primary care giver of the children and that Brian worked as much as seventy hours a week and was thus absent much of the time. There was also evidence from which the jury could conclude that if Brian was given the exclusive right to designate the primary residence of the children, it would be his mother who would take over the role as the children's primary care giver. And, finally, there was evidence from Georgia's family and friends that she was a caring and loving mother dedicated to her children. Thus, we hold that the evidence is legally and factually sufficient to support the jury's verdict.

While the jury determined which parent should have the exclusive right to designate the primary residence of the children, the trial court awarded the other powers, rights, and duties to the parents. Brian argues that the trial court abused its discretion in appointing both him and Georgia as joint managing conservators while giving Georgia the exclusive right to make decisions regarding the children's education and health care.

The Family Code presumes the appointment of the parents as joint managing conservators to be in the best interest of the children. *See* TEX. FAM. CODE ANN. § 153.131(b). The trial court must also allocate power between the parents either independently, jointly, or exclusively. *See id.* § 153.134(b)(2)-(4). The powers of the parent include the right to make decisions concerning the children's education, medical and dental care, as well as psychological and psychiatric treatment. *See id.* § 151.001(a)(6), (10). To effectuate the best interest of the

children, the trial court retains broad discretion in crafting the rights and duties of each conservator. *Swaab v. Swaab*, 282 S.W.3d 519, 532 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd w.o.j.).

Brian argues that he should have been allowed equal, if not exclusive, rights regarding where the children should attend school because he was very involved with the children's education and was the parent who ensured the children were involved in extra-curricular activities. However, there was evidence to support the trial court's decision to award Georgia the exclusive right to make educational decisions. There was evidence that Brian worked much of the time and that Georgia had been the primary care giver, making most of the children's educational decisions before the filing of the divorce action. Further, the trial court knew that the parties vehemently disagreed about where the children should attend school. Georgia wanted the children enrolled near where she was residing in Helotes. Brian wanted the children to remain in the school they attended in Stone Oak. Georgia argued to the trial court that if she was not granted the exclusive right to make educational decisions, she and Brian would be in court constantly, as they obviously could not agree on the issue. From the record, the trial court could have concluded that it was in the children's best interest for Georgia, the person whom the jury awarded the right to designate the primary residence of the children, to have the exclusive right to determine which school the children should attend. The trial court could have also concluded that if the children attended a school near their primary residence, their schoolmates would be their neighbors and thus they would have more social interaction. We note that Brian also argues the children were "established" in their school and should not be disrupted by enrolling in a new school. However, the trial court could have concluded it was in the children's best interest not to commute forty-five minutes during rush hour each way to school and that because the children

were enrolled in kindergarten and second grade, any disruption in their education would be minimal. We find no abuse of discretion by the trial court.

Brian also argues that because he is a practicing physician, he should be allowed equal rights regarding the children's medical, psychological, and psychiatric care. However, from the evidence, the trial court was entitled to conclude that all, or at least most, of the medical decisions related to the children had been competently made by Georgia for most of their lives. The trial court could have also concluded that it was reasonable for the parent who is the primary care giver to be the person charged with the responsibility of obtaining medical help, following doctor's orders, and selecting medical providers. There was also evidence that Brian and Georgia could not agree on medical decisions. When one of the children needed psychological counseling, Georgia suggested Clifton Fuller, a therapist whom she and Brian had used previously for couples counseling. Brian objected and recommended a therapist who was having professional difficulties with the governing body of his profession, something that Georgia discovered using a simple Internet search. The matter was taken to the trial court, which then authorized Fuller, Georgia's choice, to counsel the child. From this record, the trial court could reasonably have concluded that awarding one parent the exclusive right to make such decisions was the only way to avoid further conflicts and that Georgia was the best person to designate as having that exclusive right. *See Swaab*, 282 S.W.3d at 533 (finding no abuse of discretion by trial court in granting mother exclusive right to make medical decisions when there was evidence that the parents continually struggled over these matters and were not able to resolve their differences). We find no abuse of discretion by the trial court.

Finally, in its findings of fact and conclusions of law, the trial court found that "the rights and duties of the parties as set forth in the Final Decree of Divorce signed on February 9, 2010,

[are] in the best interest of the children." Brian appears to be arguing in his brief that this finding was too "generic" and that the trial court should have issued additional findings that were more specific. Specifically, in his request for additional findings, Brian proposed the following findings of fact to the trial court:

1.  The court finds it to be in the best interest of the children to appoint the parents as joint managing conservators, yet divide rights and duties in a manner that essentially establishes [Georgia] as sole managing conservator and [Brian] as possessory conservator.

2.  The court finds it is in the best interest of the children to grant [Georgia] the exclusive right to consent to medical, dental, and surgical treatment involving invasive procedures and the exclusive right to consent to psychiatric and psychological treatment of the children because, although [Brian] is a medical doctor, with the attendant education, experience, knowledge, and training, [Georgia] has the exclusive right to determine the residence of the children within Bexar County.

A trial court's duty to enter additional findings of fact and conclusions of law is finite; that is, it need only enter additional findings and conclusions on ultimate or controlling issues. *In re M.M.M.*, 229 S.W.3d 821, 823 (Tex. App.—Fort Worth 2007, no pet.); *In re Marriage of Jameson*, No. 07-02-00476-CV, 2004 WL 237829, at *1 (Tex. App.—Amarillo 2004, pet. denied). Findings that are evidentiary in nature do not fall within that scope. *In re M.M.M.*, 229 S.W.3d at 823; *In re Marriage of Jameson*, 2004 WL 237829, at *1. Thus, ultimate or controlling issues or facts are those essential to the cause of action or defense. *In re M.M.M.*, 229 S.W.3d at 823; *In re Marriage of Jameson*, 2004 WL 237829, at *1. If the fact is necessary to form the basis of the judgment, then it is an ultimate or controlling one. *In re M.M.M.*, 229 S.W.3d at 823; *In re Marriage of Jameson*, 2004 WL 237829, at *1. In contrast, an evidentiary fact is one that may be considered by the factfinder in deciding the controlling issue and is necessarily embraced in the determination of the ultimate issue. *In re M.M.M.*, 229 S.W.3d at 823; *In re Marriage of Jameson*, 2004 WL 237829, at *1. For example, requests that, in essence,

ask the court to explain what it relied on or how it arrived at a particular finding are evidentiary and need not be addressed by the trial court. *In re M.M.M.*, 229 S.W.3d at 823; *In re Marriage of Jameson*, 2004 WL 237829, at *1. The ultimate or controlling issue or fact here is best interest of the children. *See In re M.M.M.*, 229 S.W.3d at 823; *In re Marriage of Jameson*, 2004 WL 237829, at *1. Thus, the trial court in its findings did address the ultimate or controlling issue or fact. *See In re M.M.M.*, 229 S.W.3d at 823; *In re Marriage of Jameson*, 2004 WL 237829, at *1. In contrast, Brian's proposed findings, which address how or why the trial court resolved the ultimate or controlling fact issue in a particular way, are merely evidentiary and need not be entered by the trial court. *See In re M.M.M.*, 229 S.W.3d at 824 (holding that father's proposed additional findings addressing why the trial court found that termination of mother's rights was not in the children's best interest was merely evidentiary and thus, the trial court had no duty to enter them); *In re Marriage of Jameson*, 2004 WL 237829, at *2 (holding that mother's proposed finding that simply addressed how or why the trial court concluded that it was in the child's best interest for the father to designate the primary residence of the child was merely evidentiary and need not be entered by the trial court). Therefore, we find no error in the trial court not issuing additional findings.

### E.     Evidentiary Issues

Brian next argues that the trial court erred in limiting Jessica Robin Thompson's testimony. We review a trial court's decision to admit or exclude testimony under an abuse-of-discretion standard. *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002).

At trial, Jessica Robin Thompson testified that her son was best friends with one of Georgia and Brian's children. When it became apparent that Thompson was going to be questioned about Georgia's parenting abilities, Georgia's attorney objected:

> I have no idea what's coming, but my assumption is, it's not going to be complimentary. I suggest that the designation of Ms. Thompson had nothing to do with Georgia. She was not mentioned. There was no warning that she would have any comments or commentary concerning Georgia. And I object, therefore, to him eliciting testimony about her.

The trial court looked at Brian's designation of Thompson as a witness, noted that it just said "parenting skills of Dr. MacGillivray," agreed that the designation did not mention Georgia, and sustained the objection. Based on this record, we find no abuse of discretion by the trial court in preventing Thompson to testify outside of Brian's designation.

Brian also argues that the trial court abused its discretion in overruling his objection to Michael Holguin testifying about how one could fabricate Facebook entries. At trial, Brian objected to Holguin testifying, arguing that Holguin had not been designated by Georgia as an expert witness. Georgia responds that she called Holguin to rebut the testimony of Mark Doggett.

Doggett, one of Brian's witnesses, testified about Georgia's Facebook page. At trial, Georgia objected to Doggett's testimony, arguing that Doggett had been designated as a friend of Brian's and that the designation made no reference to Georgia or her Facebook page. In ruling on her objection to Doggett's testimony, the trial court stated that it did not "particularly like it, but that [it was] going to go ahead and allow it." Among other things, Doggett testified about two entries appearing on Georgia's Facebook page.[3] To rebut this testimony by Doggett, Georgia called Holguin, a web designer. Before Holguin took the witness stand, Brian objected, stating that he anticipated Holguin was going to give expert testimony and that Holguin had not been designated as an expert. Georgia argued that Holguin was being properly called as a rebuttal witness to impeach Doggett's testimony. The trial court agreed and overruled Brian's objection. Holguin then testified about how one can easily fabricate an entry on Facebook. Holguin testified

---

[3] Georgia testified at trial that her Facebook page had been "compromised" and that she had not created the entries in question.

that during a break in the trial, in about fifteen minutes, he created false Facebook entries that looked similar to the one that had been offered in evidence during Doggett's testimony. While Brian objected before Holguin testified, Brian made no further objection to Holguin's testifying as an expert during Holguin's testimony. Nor did Brian obtain a running objection. Thus, Brian failed to preserve this issue for appeal. Further, even if Brian had preserved this issue, Holguin's testimony was cumulative of Doggett's testimony, as Doggett himself testified that Facebook entries could be easily fabricated. Thus, any error was harmless. *See State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009) (explaining that the exclusion or admission of evidence is harmless if the evidence was cumulative of other evidence).

### CONCLUSION

We affirm the judgment of the trial court.


Karen Angelini, Justice