

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00832-CV

Maryvel **SUDAY**, Independent Executor of the
Estate of Olga Tamez de Suday, Deceased
Appellant

v.

Jesus Lozano **SUDAY**,
Appellee

From the County Court at Law, Val Verde County, Texas
Trial Court No. 3,625 CCL
Honorable Stephen B. Ables, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Luz Elena D. Chapa, Justice
Beth Watkins, Justice

Delivered and Filed: November 25, 2020

AFFIRMED

This is an appeal from a final decree of divorce incorporating a Rule 11[1] agreement regarding the property division between appellant Olga Tamez de Suday ("Olga")[2] and appellee Jesus Lozano Suday ("Jesus"). Olga raises four issues challenging the circumstances under which the Rule 11 agreement was reached. We affirm.

---

[1] TEX. R. CIV. P. 11.
[2] Olga Tamez de Suday died after the divorce and this appeal is being prosecuted by Maryvel Suday as independent executor of her estate. For simplicity, we will nevertheless refer to Olga as the appellant.

**BACKGROUND**

Olga and Jesus were married in 1966. Olga filed for divorce in Texas in 2017. Jesus filed for divorce in Mexico and also filed a counterpetition for divorce in the Texas action. Olga was represented at various times during the Texas divorce proceedings by a number of different attorneys. At the time of the final hearing in 2019, she had discharged her most recent attorney and appeared *pro se*.

When the parties appeared for trial on the merits, there initially was a discussion among Olga (assisted by an interpreter), counsel for Jesus (Rogelio Munoz, Jr.), and the trial court. During this discussion, the court inquired about the status of the Mexican divorce proceedings. Munoz informed the court that the Mexican court had entered a decree of divorce but had not yet ordered a property division. Munoz tendered to the court, and to Olga, a copy of the Mexican decree and a document translating that decree into English. The trial court noted its understanding that either it or the Mexican court could grant the divorce and, whichever one did so first, the other need not do so again. The court then stated, "They are divorced. We need to do a property division here."

Munoz then explained that the parties' assets in the United States consisted of cash in the form of various CDs, a residence, and a couple of vehicles. He noted that the couple also owned real property in Mexico. Olga indicated that she believed there was more money than Jesus was accounting for, an assertion Jesus denied. At this point in the discussion, the court swore in the interpreter, realizing that it had not done so at the start of the hearing. The interpreter at times related what Olga was saying as verbatim translation, but at other times paraphrased what she was saying in a more summary fashion. For example, the interpreter would say, "She wants to state that . . . ," or "She only asks from you . . . ," rather than simply stating Olga's answer in English in the first person, as if Olga herself were speaking.

The trial court informed Olga that it could not divide the couple's property in Mexico and urged her to retain an attorney to represent her in the Mexican proceedings. The court then told Olga, "So we can take care of this United States divorce if we can have an agreement between you and your husband of what percentage of the cash you'll get and what percentage of the house you'll get and that will be behind us." The court then granted a brief recess so that Munoz, Olga, and Olga's son could discuss a potential settlement.

Following the recess, Munoz informed the court that they were close to a settlement, that Olga wanted to return in two or three weeks to conclude the matter, but that Munoz believed it could be concluded that day rather than dragging it out. The court again recessed and the parties continued to confer.

When court reconvened, Munoz announced that the parties had not yet reached a settlement but that they were very close. He described his client's offer and urged the court to resolve the matter that day. Olga, on the other hand, requested that she be given more time so that she could get an attorney's advice. She also raised an issue concerning a life insurance policy held by Jesus. After further discussion, an offer was made concerning the policy that Olga found acceptable. The court then addressed Olga again:

> So they've offered to let you have the house for as long as you want to live there and they've offered you some cash and they've offered to keep you on the million and a half dollar insurance policy. But the problem is if you don't take that today, that he doesn't have to offer it to you tomorrow. And I want to give you the opportunity if you want to go ahead and try to settle this today, you can do that. If you don't want to and we continue this case, they may withdraw the offer. . . . If you don't take the offer, and you don't have to, but they can withdraw the offer when they walk out of this courtroom.

The interpreter and Olga's son then both explained the matter to her in Spanish.

Further discussion ensued concerning the condition of the residence and the need for some repairs, during which the court stated,

> Okay. Stop. I don't want you [Olga] to feel that you have been forced into anything. If I have to make the decision about how to divide this, it may not be what you want and it may not be what he [Jesus] wants. And if we go today and we continue this case and I have you come back, it would have to be the last time. There would—I've given you some continuances. And if I continue it, I cannot continue it again. I've given you too many times to come back. So do you want to accept this offer or do you want to reject it?

The court informed both parties that, if the matter were not settled that day, it would be reset to a later date, at which time the court would divide the property. It noted, "what has been articulated to me sounds like some fair dealing; but if you-all can't reach a fair deal, I'm going to divide the property." The court then reiterated that it would reset the matter if no agreement was reached that day. In addition, it noted that Olga was responsible for the case being drawn out and additional attorney's fees being incurred, and that it would take that into consideration if it were called upon to make the property division.

Olga's son then conferred with her again, after which she said she would accept the settlement offer on the condition that Jesus fix the house. But she then raised an issue of "spousal maintenance" and further discussion followed. The court recessed the proceedings once more, stating, "if you want to try to put together a Rule 11 agreement for everybody to sign, you-all can do that."

When the parties again returned to the courtroom, Munoz announced that they had reached an agreement. Jesus was sworn in and affirmed that he had agreed to, and signed, the Rule 11 agreement. Olga was also sworn in and affirmed that the interpreter had translated the agreement into Spanish for her, she understood it, and she was in full agreement with it. Munoz then read the agreement out loud to ensure that Olga understood it. Olga responded "Yes" to each of the agreement's provisions except the manner in which certain CDs were divided. At that point, she told the court that she did not agree with that provision and requested that the court decide how to split those assets. The court explained that the property would either be divided by agreement or

by the court, but not both: "If you-all reach an agreement today, I'll approve it. If you don't reach an agreement, I'll make the entire 100 percent decision on the property." Olga responded that she was not very happy with the negotiated settlement, but that she accepted it.

Olga again affirmed that, before she signed the agreement, she had reviewed it in a language she understood. When asked whether she signed the agreement because she agreed with its terms, she responded that she was not very convinced, but she did sign it.

At this point, a new issue relating to the life insurance policy was raised. A proposed solution was offered, to which Olga agreed. While Munoz was inserting the additional language into the Rule 11 agreement, the trial court questioned Olga concerning her understanding of, and agreement with, the settlement. In answer to the court's inquiries, Olga affirmed once more that she understood the agreement, entered it freely and voluntarily, and understood that the court could not later change it. The court ultimately approved the Rule 11 agreement.

Between the time the court approved the agreement and the time it signed the final decree of divorce, Olga retained an attorney who filed a verified "Motion for New Final Hearing and/or Motion for New Trial" on her behalf. The motion asserts that the property division was an abuse of discretion, and that Olga did not sign the Rule 11 agreement freely, voluntarily, knowingly, and intelligently because she was not adequately assisted by the interpreter and was not represented by counsel. In contesting the property division, the motion identifies some shares of stock and several pieces of real property in Mexico, and asserts that all of those properties were awarded to Jesus by the Mexican court. The motion also alleges that Jesus committed fraud by hiding certain community assets.

Jesus filed a verified response to Olga's motion, which was supported by affidavits from Olga's son and the interpreter. The son states that he attended the off-the-record settlement negotiations, all of those negotiations were conducted in Spanish, Olga took an active part in the

negotiations, the interpreter accurately translated each paragraph of the Rule 11 agreement into Spanish as it was written down, and Olga fully understood the agreement.

The interpreter states that he is fluent in English and Spanish "at a high level" and has been engaged as an interpreter by the Mexican and Guatemalan consulates. He, too, states that all of the negotiations were conducted in Spanish, Olga took an active part in the negotiations, and he accurately translated each paragraph into Spanish as it was written down.

The court's docket sheet reflects that Olga's motion was set for hearing on August 26, 2019. Our record does not contain any reporter's record from that hearing, nor does it contain any order on the motion. The only activity reflected on that date is that the trial court signed a final decree of divorce incorporating the terms of the Rule 11 agreement. Olga filed an amended motion for new trial, repeating the grounds raised in the previous motion and adding a list of "unresolved and pending issues." Olga also asserts in the amended motion that the Texas court has dominant jurisdiction and, as a result, the Mexican divorce is not valid and the Texas court should have divided all of the parties' property in Mexico.

Jesus again responded with the same affidavits from Olga's son and the interpreter. The record does not show that the amended motion for new trial was ever set for hearing. As a consequence, it was overruled by operation of law. This appeal followed.

## ISSUES

In four issues on appeal, Olga asserts that the trial court erred by failing to appoint a qualified interpreter to assist her, by accepting Munoz's assertions that a Mexican court had properly exercised jurisdiction over her and that the Texas court lacked authority to divide property in Mexico, and by erroneously advising Olga that the court could not proceed with the divorce or divide property in Mexico. Although not listed as a discrete issue, Olga also contends that the trial court improperly interjected itself into the settlement negotiations as an advocate for Jesus.

**DISCUSSION**

*Preservation of error*

As Jesus urges that many of Olga's issues are not preserved for our review, we address, as a preliminary matter, the legal principles governing error preservation. These principles are applied below in the context of the issues to which they apply.

Generally, to preserve error for appellate review, the record must show that the complaining party made a timely request, objection, or motion, with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1. The party must also obtain a ruling on that request, objection, or motion. *Id.*

A party is required to raise certain issues in a motion for new trial as a prerequisite to raising the issue on appeal. *See* TEX. R. CIV. P. 324(b). One such issue is a complaint on which evidence must be heard. TEX. R. CIV. P. 324(b)(1). In addition to raising the issue, it is the responsibility of the complaining party to obtain an evidentiary hearing on it. *JD Shelton Enters LLC v. AGL Constructors*, No. 05-18-00765-CV, 2019 WL 2498682, at *2 (Tex. App.—Dallas June 17, 2019, no pet.) (mem. op.); *see* TEX. R. APP. P. 33.1(b). "The overruling by operation of law of a motion for new trial preserves a complaint raised in the motion for appellate review only if the taking of evidence was not necessary to properly present the complaint in the trial court." *Magna Donnelly Corp. v. DeLeon*, 267 S.W.3d 108, 114 (Tex. App.—San Antonio 2008, no pet.).

We turn now to Olga's complaints on appeal.

*Qualification of the interpreter*

Olga first contends that the interpreter provided to assist her at the final hearing was not qualified. Jesus argues that this issue is not preserved for review. *See* TEX. R. APP. P. 33.1. We conclude that the asserted error was adequately raised in Olga's amended motion for new trial. In

addition, as the issue is argued by Olga, it is not one that requires the taking of evidence. We conclude that the issue is properly preserved.

The Texas Rules of Evidence require that "[a]n interpreter must be qualified and must give an oath or affirmation to make a true translation." TEX. R. EVID. 604. In counties with a population of less than 50,000,[3] "a court may appoint a spoken language interpreter who is not a licensed court interpreter." TEX. GOV'T CODE ANN. § 57.002(c). The interpreter need only be at least 18 years old, not a party to the proceeding, and qualified by the court as an expert. TEX. GOV'T CODE ANN. § 57.002(e). "An attack on the competency of an interpreter is reviewed for an abuse of discretion." *M.M.V. v. Texas Dep't of Family & Protective Servs.*, 455 S.W.3d 186, 190 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Olga does not dispute that the interpreter was over the age of 18 and that he was not a party to the proceeding. *See* TEX. GOV'T CODE ANN. § 57.002(e). Rather, she disputes his actual ability as a translator. In this context, Olga argues that the trial court was required to inquire on the record about the interpreter's qualifications. She does not, however, cite any authority imposing that requirement. While Government Code section 57.002 requires that an interpreter be qualified by the court as an expert, it does not require that the court make an express finding on the record. *See id.* Further, the interpreter's affidavit states that he is fluent in English and Spanish "at a high level" and has been engaged as an interpreter by the Mexican and Guatemalan consulates. Olga does not identify anything in the record refuting these qualifications, nor does she dispute them in her amended motion for new trial or in her brief on appeal.

---

[3] We take judicial notice that, at the time of the final hearing in June 2019, Val Verde County had a population of less than 50,000. *See* https://www.census.gov/quickfacts/valverdecountytexas (reflecting population of 49,025 on July 1, 2019).

Olga's argument that the interpreter was unqualified rests on her criticism that he often paraphrased or summarized her answers rather than providing a more verbatim translation. She does not, however, contend that his explanations of her answers were inaccurate. Her complaint goes only to the form in which the interpreter relayed his translation, which does not implicate his qualification to accurately translate the proceedings for her.

Olga also insinuates that the interpreter was not qualified because he may have been one of the couple's adult sons. Olga misinterprets the record. One of the couple's sons, Jesus Tamez Suday, was present at the final hearing and took part in the off-the-record negotiations. But the son was not the same person as the interpreter, who identified himself on the record as Marcelino Sanchez Garcia.

Finally, Olga complains that the trial court did not administer the oath to the interpreter until "well into the proceedings." But the record reflects that, while the court did not administer the oath at the start of the hearing, it did so quite early in the proceeding. The only topics discussed prior to the administration of the oath were the fact of the divorce proceedings in Mexico and the extent of marital property in the United States. Much of those discussions was reiterated after the oath was administered. Again, Olga does not contend that the interpreter's translations, either before or after administration of the oath, were inaccurate. She has not identified any harm resulting from the belated administration of the oath and none is apparent from the record. *See* TEX. R. APP. P. 44.1 (harm required to show reversible error).

We conclude Olga has not demonstrated that the interpreter provided to assist her at the final hearing was not qualified to do so or that the timing of the oath caused her any harm. *See* TEX. R. EVID. 604; TEX. R. APP. P. 44.1. Issue number one is overruled.

*Jurisdiction of the Mexican court*

In her second issue, Olga contends that the trial court should have inquired into the Mexican court's jurisdiction over her before accepting Munoz's assertion that the Mexican court had already entered a divorce decree. Insofar as Olga is asserting that the Texas court should have decided the issue of divorce because the Mexican court lacked jurisdiction to do so, she has not demonstrated any error. The final decree signed by the trial court acknowledges the Mexican divorce, but also specifically orders that Olga and Jesus "are divorced and that the marriage between them is dissolved on the ground of insupportability."[4] The court therefore did adjudicate the issue of divorce pursuant to Texas law. *See* TEX. FAM. CODE ANN. § 6.001 (recognizing insupportability as ground for dissolution of marriage).

It appears Olga's real complaint is that the Mexican court had no power to divide the couple's property in Mexico because it lacked jurisdiction over her. Olga also argues on appeal that the Mexican court lacked jurisdiction because Jesus did not fulfill statutory residency requirements. She urges, as a result, the Texas court should not have considered the Mexican divorce decree and should, instead, have divided the property in Mexico. Olga, however, did not assert in the trial court that the Mexican court lacked personal jurisdiction over her. Instead, she urged in her amended motion for new trial only that the Texas court had dominant jurisdiction. Nor did she raise the issue of the residency requirements below. Therefore, we conclude her complaints are not preserved for review. *See* TEX. R. APP. P. 33.1. Olga's second issue is overruled.

*Failure to divide the property in Mexico*

We interpret Olga's third issue as asserting that the trial court abused its discretion by failing to divide property located in Mexico and by failing to take that property into account when

---

[4] The trial court suggested including such language in the decree to cover the contingency that the couple was not actually divorced in Mexico.

dividing the couple's assets. These assertions fail because the trial court in this case did not divide the couple's property at all. Rather, the property division was effected by agreement of the parties. Once the court accepted the terms of the agreement as just and right,[5] it was bound by those terms. *See* TEX. FAM. CODE ANN. § 7.006; *Swaab v. Swaab*, 282 S.W.3d 519, 528 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd w.o.j.).

The Rule 11 agreement in this case specifically states, "The parties have agreed that the Court will not divide the Mexican property." The trial court, being bound by that term of the agreement, did not abuse its discretion by not dividing the property in Mexico. *Swaab*, 282 S.W.3d at 529 (court did not abuse discretion by entering judgment based on property division agreement). Accordingly, we overrule issue number three.

*Authority to divide property in Mexico*

Olga contends that the property in Mexico consisted of real property and shares of stock. In her fourth issue, she complains that the trial court incorrectly advised her that it lacked authority to divide this property, and that misstatement of law colored the eventual settlement agreement.

Again, we must conclude Olga's complaint is not preserved for our review because she did not raise it in her amended motion for new trial or bring it to the trial court's attention by any other means. *See* TEX. R. APP. P. 33.1. Therefore, issue four is overruled.

*Involvement of the trial court*

In conjunction with her fourth issue, Olga argues that the trial court interjected itself into the settlement negotiations as an advocate for Jesus. This asserted error was not raised in the court below and is not preserved for our review. *See* TEX. R. APP. P. 33.1. We note, however, that after

---

[5] A trial court's decision to approve or reject a property division agreement under section 7.006 of the Texas Family Code is reviewed for abuse of discretion. *See Markowitz v. Markowitz*, 118 S.W.3d 82, 89 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Olga does not raise an issue asserting abuse of discretion in approving the parties' agreement.

the parties concluded their negotiations, the trial court specifically asked Olga whether she understood the agreement and whether she was entering it freely and voluntarily. Olga answered "yes" to both inquiries. Also, Olga's son and the interpreter both submitted signed affidavits stating that Olga understood and took an active part in the settlement negotiations, which were conducted in Spanish outside the presence of the court. The record simply does not support the assertion that the trial court improperly advocated for Jesus or pressured Olga into entering the Rule 11 agreement. Olga's final issue is overruled.

## CONCLUSION

Having overruled all Olga's issues on appeal, the final decree of divorce is affirmed.

Sandee Bryan Marion, Chief Justice